### King v. Ohio Valley Fire & Marine Insurance Company.

(Decided February 5, 1926.)

#### Appeal from Daviess Circuit Court.

1. Insurance—Use of House Insured as Dwelling as Bawdyhouse Held Proper Defense.—While fire policy insured house "occupied as a dwelling house," that house was not so occupied, but, unknown to insurer, was used for bawdyhouse, was a proper defense.

2. Evidence—Well Known that Insurance Rates Vary According to Use Made of Insured Property.—It is well known that insurance rates vary according to the use made of the insured property, and that there are purposes for which property may be used that render it so hazardous that insurance companies will not insure it at all.

3. Contracts—Agreement Between the Parties is Essential Element. —One essential element of a contract, if not the most essential, is the requirement that there be an agreement between the parties.

4. Evidence—Evidence of Insurer's Agent as to What he Had Heard of Properties Before Issuance of Policy Held Competent.—Where matter under inquiry was whether insurer's agent, at time he wrote policy, knew purpose for which property was used, evidence as to what he had heard about properties prior to issuance of policies was competent, even though otherwise hearsay.

5. Evidence—Witness May be Asked Whether Risk Would have Been Accepted at Dwelling House Rates if Truth as to its Use Had Been Known.—Where insurer defends because of concealment and misrepresentation of fact in insurance contract, its agent may be

asked if he knows of usage and practice of reputable companies and agents as to accepting or rejecting risks, and, if he replies he does, he may be asked whether, in usual course of the business, a risk on a house used as bawdyhouse would have been accepted at a dwelling house rate if truth had been known.

6. Insurance—Overruling Objection to Policeman's Testimony that, when Alleged Bawdyhouse was Reported to Him, he would go there, Held Proper.—In suit on dwelling house policies, defense being that houses were used as bawdyhouses, overruling objection to testimony of a policeman that, whenever the houses were reported to him, he would go there, held proper; witness merely explaining what caused him to go, and not stating what was reported to him.

7. Insurance—Objection to Evidence Showing Purpose for which Property was Used Properly Overruled.—Where insurer alleged that property insured as dwelling houses was used as bawdyhouses, objection to evidence of policeman that, when he was there, he saw men and women in their night clothing, held properly overruled; it showing purpose for which houses were used.

8. Insurance—Overruling Objection to Evidence as to Business of Persons Taken from Alleged Bawdyhouses Held Proper.—Where insurer alleged that houses insured as dwelling houses were used as bawdyhouses, objection to question as to business of persons taken from the houses in a raid, was properly overruled.

9. Insurance—Evidence of Reputation of Persons Taken from Alleged Bawdyhouses Properly Admitted.—Where insurer alleged that houses insured as dwelling houses were used as bawdyhouses, testimony of witness that reputation of women taken from the houses on a raid for chastity and virtue was bad was properly admitted; such evidence tending to show purpose for which property was being used.

10. Insurance—Court Records, Showing Use of Property for Immoral Purposes, Held Competent.—Where insurer alleged that houses insured were not occupied as dwellings, but were used as bawdyhouses, court records showing that the properties had been used for immoral purposes were competent.

11. Evidence—Statement that Witness Could Smell Gasoline Not Objectionable as Conclusion, of Witness.—In suit on fire insurance policies, chief of fire department, in testifying as to the fire, was properly allowed to state that he "could smell gasoline," as against the objection that it was a conclusion of the witness.

12. Evidence—Statement of Chief of Fire Department that Fire had Been Laid by Some One Held Objectionable.—In suit on fire insurance policies, statement of chief of fire department that he found the fire had been laid by somebody was objectionable.

13. Evidence—Photographs of Burned Buildings, Taken When Witness was Present, Held Competent.—In suit on fire insurance policies, where question was how much of insured houses was burned photographs of the property which witness testified were taken

when he was present, and correctly represented burned buildings, held competent; whether they showed correct situation being for jury.

14. Evidence—Correctness of Photographs Need Not be Proved by One who Took Them.—Correctness of photographs need not be proved by one who took them, and may be used when shown by any person that they are photographs of the thing in question.

15. Insurance—Issues as to False Representation as to Use of Houses and as to Incendiarism Held for Jury.—Where insurer alleged that houses insured as dwelling houses were used as badwyhouses, and that fire had been laid therein, evidence held sufficient to submit case to jury, and insured's motion for peremptory instruction was properly overruled.

16. Insurance—Instruction as to Materiality of Concealment Disapproved.—Instructions, submitting to jury's determination, from its its own judgment, question of materiality of matters which insurer claimed insured concealed, cannot be approved, but jury should be required to measure materiality of misrepresentation or concealment, not by the importance the jury attaches to matters misrepresented or concealed, but by the importance which those engaged in the insurance business attach to them.

17. Insurance—Instruction Submitting to Jury's Determination What Insurer Would have Done Had it Known the Truth Not Approved. —In suits on insurance policies, instructions submitting to jury what insurer would have done had it known the truth cannot be approved, but question to be submitted is: If it had known the truth, what would insurer have done, acting reasonably and naturally in accordance with practice usual among fire insurance companies?

BARNES & SMITH and LOUIS I. IGLEHART for appellant.

W. A. BERRY and E. B. ANDERSON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The appellant, King, filed two suits against the appellee, seeking to recover upon policies of insurance; the suits were heard together, resulted in judgments for the insurance company, and King has appealed. The policy sued on in the first action was No. D14623, and insured against loss by fire a one and one-half story house at 112 Mulberry street, Owensboro, Ky., and its contents. It was a $4,000.00 policy, $3,000.00 being upon the building and $1,000.00 on the contents. The policy sued on in the second action was No. D14621. It insured against loss by fire a one story house at 120 Mulberry street. It was also a $4,000.00 policy, $2,000.00 being upon the building

and $2,000.00 on the contents. These two houses were located on the same side of Mulberry street, and were not more than 10 or 12 feet apart. Both of these buildings were vacant at the time the fire occurred, and had been so for about 60 days. They were situated in what is known as the red light district. The fire in these houses was discovered about 12:45 in the early morning of July 27, 1922. The fire department reached the fire one and one-half minutes thereafter. They found both houses afire upon the inside. All the doors were locked and the windows nailed down. The window shades were pulled down. In No. 112, the dresser and furniture drawers had been pulled out and filled with paper. The sheets and bedding had been taken from the beds and tied together in a sort of chain. The inside doors of the building were propped open with chairs. The lace curtains had been taken down and tied in a chain. The bedclothing and the chains made by the bedclothing and curtains were strung over the chairs leading from room to room, through the house and up the back stairway. The odor of gasoline was prevalent. The house at 120 was in practically the same condition, except there was a lot of junk piled on the stairway. The odor of coal oil or gasoline was prevalent. Both houses were afire on the inside all over. Firemen testified that they would get the fire knocked out and in a few minutes gas would rise up and the fire would flash up again. The defendant resisted these actions and plead: First, that it was not liable at all because the plaintiff represented that these houses were occupied as dwellings, whereas they were in fact used as bawdy houses, which was unknown to the defendant. Second, it was not liable at all because the fire was caused to happen and was brought about by the intentional and wilful procurement and acts of the plaintiff himself. The first trial was had April 11, 1924. The jury failed to agree. The second was had June 19, 1924. In each case the jury returned a verdict for defendant. The plaintiff moved for a new trial, and assigned as reasons therefor: (1) Error of the court in overruling demurrer to the answer of the insurance company. (2) Error in admission and rejection of evidence. (3) Error in refusing to peremptorily instruct the jury to find for the plaintiff. (4) Error in refusing instructions offered by plaintiff. (5) Error in instructing the jury. We will discuss these alleged errors in this same order.

(1)   In each of these policies there appears immediately after the description of the property, this expression: "Occupied as a dwelling house." In its answers, defendant alleges they were not so occupied, but were used for other purposes as stated above, and that on account thereof, the policies were void. Insurance contracts are not different from other contracts, and it is well known that insurance rates vary according to the use made of the insured property, and that there are purposes for which property may be used that render it so hazardous that insurance companies will not insure it at all. Whether or not this property was used for such a purpose and whether or not if so used, it would have been rejected or only accepted at a higher rate by a reputable insurance company acting reasonably and naturally, according to the usage and custom prevailing among such companies, was a legitimate defense, properly presented by the answer, and King's demurrer thereto was properly overruled.

One of the essential elements of a contract, if not the most essential element, is the requirement that there be an agreement between the parties.

Dixie Fire Ins. Co. v. Wallace, 153 Ky. 677, 156 S. W. 140; Ann. Cas. 1915C 409.

> "An insurer is at liberty to select the character of risk it will assume and it is not liable except upon proof that the loss occurred within the terms of the policy. . . . A bawdy house and saloon is not a dwelling house."

Allen v. Home Ins. Co., 133 Calif. 29, 65 P. 138. Defendant should not be held for this loss if this was a bawdy house when it had insured a dwelling house.

(2)   The agent, McKinney, who wrote these policies, in the course of his testimony, was asked this question: "Tell the jury what you had heard about these properties prior to the issue of the policies." The plaintiff's objection to the question was overruled. The witness answered: "The houses were not then used for bawdy houses; all the girls had been run out of town." King insists that this was hearsay, and the evidence incompetent. If this evidence had been offered directly upon the question of the use of the property for immoral purposes, King's objection would have been well taken, but the matter under inquiry at the time was whether or

not the insurance agent, McKinney, at the time he wrote these policies knew the purpose for which the property was used, and while he may not have had direct evidence of the purpose for which the prpoerty was used, still, he may have received information sufficient to put him on inquiry, and upon that feature, this evidence was competent, even though it would otherwise be hearsay. When it was admitted, however, the court should have told the jury to not consider that evidence as bearing upon the question of whether or not the property was used for immoral purposes, but solely upon the question whether or not McKinney knew it was being so used, if it was. Further, in his evidence, he was asked: "Would your company have issued those policies or you as agent, have issued those policies, if you had known that they were bawdy houses, if that was a fact?" He answered: "No, sir," after the court had overruled plaintiff's objection to the evidence.

Where there has been a concealment or misrepresentation of a fact in an insurance contract and the company is defending because of that concealment or misrepresentation, the temptation for the individual insurance company or individual agent to say that if the truth had been known, the policy would not have been issued is so great that the courts require this matter to be reached in a different way. The witness should have been asked whether or not he knew the usage and practice prevailing among reputable fire insurance companies making premium rates and accepting or rejecting risks and whether or not he knew the usage and practice among reputable fire insurance agents in making rates and accepting or rejecting risks and if he said he did, he should then have been asked whether or not a reputable fire insurance company or fire insurance agent, acting reasonably and naturally, in the usual course of the fire insurance business, would have accepted the risk at a dwelling house rate under the circumstances, if the truth had been known. The witness was asked further: "State to the jury if you know what is the custom of fire insurance companies in Owensboro, Ky., about insuring houses that are used and occupied as bawdy houses." After the court had overruled the defendant's objection, he answered, "They do not like to issue policies on them." This question was pretty near the proper form, but still, was not entirely correct.

J. H. Williams, a police officer, was asked if he had occasion to visit those houses. He said that he did. He was then asked, "Tell the jury what you saw there." He answered, "Whenever it was reported to me, I would go there." The plaintiff objected to this answer and moved the court to exclude it. The court overruled his motion. This was correct. The witness did not say what was reported to him. He merely explained what caused him to go there. Further along in his testimony, he said that he was down there about the 19th or 20th of December and saw some men and women in their night clothing. The plaintiff objected to that, but his objection was properly overruled, as this evidence tended to show the purpose for which the property was being used. The witness, J. C. Cox, told about making a raid on these places and getting six women out of them, who plead guilty to fornication, and were fined. He was then asked what was the business of those women in Owensboro, Ky. Plaintiff objected, and the court properly overruled his objection. He was asked what was the reputation of those women in Owensboro, Ky., for chastity and virtue and he said it was bad. This evidence was properly admitted, as those policies were issued shortly after that and this evidence tended to show the purpose for which the property was being used. Some court records were introduced over King's objection, that showed this property had been used for immoral purposes. Plaintiff's counsel says that all this evidence about the use of this property was prejudicial to his client and should not have been admitted. We agree that it was prejudicial, but still it was competent.

The chief of the fire department in the course of his testimony was asked to tell the jury the nature of the fire and to describe how it acted. He said: "The thing looked suspicious, and I could smell gasoline and on investigating, we found the fire had been laid by somebody." The plaintiff contends that those things were conclusions of the witness, and that he should merely have described the odor, and should not have given his conclusion that he could smell gasoline. Technically, perhaps, that should have been done, but the average man would have great difficulty in telling just how coal oil or gasoline smells, though acquainted with their odors, and perhaps the best description the witness could give was to say he knew their odors, and he could smell coal

oil, or he could smell gasoline. His statement that he found the fire had been laid by somebody was objectionable. He should tell what he found and let the jury draw the conclusion. Some photographs were introduced by this witness, and he testified that they were photographs of this property, that he was present when the photographs were taken, and that they correctly represented the burned buildings. The plaintiff objected to this evidence. The rule is well settled that the correctness of photographs need not be proved by the one who took them, and they may be used when shown by any person that they are photographs of the thing in question. Dillar v. Northern Calf. P. Co., 162 Calf. 531, 123 P. 359, Ann. Cas. 1913D 908; McKarrent v. Boston & N. S. R. Co., 194 Mass. 179, 80 N. E. R. 477, 10 Ann. Cas. 961.

Whether these photographs show the correct situation or not is a question for the jury to determine, and either party may introduce evidence on that question. The question was how much of these houses was burned, and these photographs were properly admitted to assist the jury in determining that. The jury may believe they are only partially correct and may believe that the evidence of no witness is entirely correct and yet from all the evidence discover the truth.

(3) Unquestionably there was enough evidence here to submit this case to the jury and the plaintiff's motion for a peremptory instruction was properly overruled.

(4) The court refused to give the seven instructions offered by plaintiff and on its own motion gave six instructions to which plaintiff objected. We cannot approve the plaintiff's instructions because they submitted to the jury's determination from its own judgment, the question of the materiality of the matters which it is claimed the plaintiff concealed. The materiality of the matters misrepresented or concealed is not a question directly for the jury's determination. The question for the jury to determine is, acting reasonably and naturally in accordance with the usual practice and custom among fire insurance companies making premium rates and in accepting and rejecting risks, what would the defendant have done, had it known the truth? In a sense, the jury passes on the materiality of the misrepresentation made, but they measure that materiality, not by the importance the jury attaches to the matters misrepresented, but by

the importance those engaged in the insurance business attach to them. To those not in the insurance business a bawdy house may not appear to be any more liable to burn than a dwelling, and the misrepresentation appear immaterial, but those engaged in that business may from their vast experience, have learned that there is quite a difference in the fire hazard, from that experience they have learned and know whether this misrepresentation if made, was material, and whether they regard it as material or not is determined by what they do under similar circumstances. The instructions given by the court were in the main, correct, but we cannot approve them because they submit to the jury for determination what the defendant would have done had it known the truth, whereas the question that should have been submitted was: If it had known the truth, what would the defendant have done, acting reasonably and naturally in accordance with the practice usual among fire insurance companies?

This case was tried before the publication of this court's opinion in the case of Modern Woodmen of America v. Shields, 202 Ky. 795, 261 S. W. 594. The same error was made by the trial court in that case, and if the trial court in this case had had an opportunity to see the opinion in the Shields case, it would not have made the error it did.

Upon a retrial of this case, the court will modify the instructions given so as to comply with the rule in the Shields case, and will further modify them so that, if plaintiff is entitled to recover, he can recover for the damages done by the fire and the efforts to extinguish the fire.

The judgment is reversed and the cause remanded for proceedings consistent with this opinion.