## Howard v. Kentucky Alcoholic Beverage Control Board.

May 25, 1943.

430

Sam H. Brown and P. H. Vincent for appellant .

Hubert Meredith, Attorney General, and William F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Pursuant to notice and a hearing before the Alcoholic Beverage Control Board held January 20, 1943, the board entered an order revoking the retail beer and liquor licenses theretofore issued to appellant and under which he was engaged in the retail sale of beer and liquor in the city of Ashland, Kentucky. Appellant appealed from the order of the board by filing in the Franklin circuit court his petition for appeal together with a transcript of the proceedings had before the board and asked that the order of the board be set aside and held for naught. Upon a trial or review of the case the Franklin circuit court dismissed the appeal, thus leaving the order of the board in force and effect. This appeal follows.

It is insisted that for various reasons the judgment of the circuit court should be reversed and remanded with directions to set aside the order dismissing the appeal and enter an order directing the board to set aside its order revoking the licenses of appellant.

Two notices were given appellant, addressed to him at his place of business in Ashland, Kentucky, one relating to the retail beer license, dated January 12, 1943, and signed by Alfred S. Portwood, Malt Beverage Administrator, and the other one relating to the liquor license, dated January 13, 1943, and signed by H. G. Rowlette, Administrator, Distilled Spirits Unit. With the exception of a slight variance with respect to certain sections of the statutes applicable to whiskey and beer, respectively, the notices are in form and substance the same. The notice relating to the liquor license reads as follows:

"You are hereby directed to appear before the State Alcoholic Beverage Control Board in the New State Office Building, Frankfort, Kentucky, on Wednesday, January 20, 1943, at 9:30 A. M., to show cause why your retail package liquor license, No. LH-2380 and your retail drink liquor license, No. LH-4011, should not be suspended or revoked for the following reasons:

"1. On November 21, 1942 you violated section 244.080 of the Kentucky Revised Statutes by selling, giving away, or delivering alcoholic beverages, or permitting alcoholic beverages to be delivered, given away, or sold to a minor.

"2. On November 20, and 21, 1942, you violated section 244.080 of the Kentucky Revised Statutes by selling, giving away, or delivering alcoholic beverages, or permitting alcoholic beverages to be delivered, given away or sold to a person actually or apparently under the influence of alcoholic beverages.

"3. On November 20, and 21, 1942, you violated section 244.120 of the Kentucky Revised Statutes by causing or permitting disorderly conduct on your licensed premises.

"4. On November 20 and 21, 1942, you violated section 243.240 of the Kentucky Revised Statutes by permitting packages of distilled spirits and wine to be opened and their contents consumed on your licensed premises."

Each notice was sent by registered mail, which appellant received, and he appeared before the board at the time and place designated in the notices and pre-

sented his defense to the charges and testified in his own behalf.

The first ground or complaint urged for reversal is directed to the notices. It is insisted that the notices were not specific and definite so as to enable appellant to prepare and present his defense; that the notices given were not in compliance with section 243.520, KRS, that the notices did not constitute legal notice because they were not served on him according to law as provided in sections 624 and 625 of the Civil Code of Practice, and that H. G. Rowlette and Alfred S. Portwood had no authority to issue such notices in their respective official capacities, nor was it shown that they were authorized by the board to act for it.

It is to be noticed that the notices failed to advise appellant of the name of the minor to whom alcoholic beverages were furnished, as set out in clause 1 of the notices; or the name of the intoxicated person or persons to whom alcoholic beverages were furnished, as set out in clause 2 of the notices; and the notice is also somewhat indefinite as to the disorderly conduct permitted on the licensed premises, referred to in clause 3 of the notices. It may be conceded that the notices should have informed appellant of the names of the minor and the person under the influence of alcoholic beverages to whom alcoholic beverages were furnished, and should also have been more definite with respect to the disorderly conduct permitted on the licensed premises. Yet, since appellant entered his appearance to the notices and proceeded to a trial of the charges on the merits without making any motion or request for the board to make the notices more definite and certain in the respects indicated, we think he waived such defects and it is now too late to raise the question for the first time on appeal. While the procedure in such cases may not be governed strictly according to the Civil and Criminal Codes of Practice, yet we see no reason why the same rules with respect to waiving defects in pleadings in civil cases and in indictments in criminal cases should not be applied in the present case. And, the same reason applies to the other alleged irregularities concerning the notices, all of which, if any, appellant waived by entering his appearance and proceeding to a trial of the charges on the merits without objections.

It is next insisted that the order of revocation of

the board was procured by the fraud of the investigator, Gregory Yancey, who was the only witness who testified in the case, and that there was no substantial evidence to support the order of the board. Yancey testified that he was a field representative of the Kentucky Committee of the Brewing Industry Foundation which is composed of Kentucky brewers, brewers shipping into Kentucky, and Kentucky wholesale distributors. He said he was only a private investigator for the brewing foundation and held no commission as a police officer of the Commonwealth of Kentucky or any of its political subdivisions. Mr. Yancey testified that on November 20, 21 and 22, 1942, he visited the place of business of appellant and on these occasions he saw minors on the premises purchasing and drinking intoxicating beverages. He said that on one occasion he counted ten minors at appellant's bar who purchased beer over the counter or from the barmaids who brought it to the booths, and they either made change there or returned the change to the customer. He was asked how he was able to form an opinion as to these customers being minors and he said that he formed the opinion by their clean, smooth appearance in respect to their faces—no beard, the manner in which they dressed, their actions and their talk. He said he asked one of the boys his age and he told him that he was sixteen years old. He said the boy was about five feet and six inches tall and weighed about 125 pounds. He said he saw this boy purchase beer over the bar and he stood at the bar and drank it, and that he was asked no questions at all when he ordered the beer. He said that on another occasion he counted seventeen minors who bought beer or were drinking beer on the premises. He said he saw three persons in or about appellant's bar "who had passed out under the influence of intoxicating drinks. One was trying to jabber something or other, and they said 'just leave him alone.' He leaned his head over and went to sleep. One was stretched out in the booth." With reference to the disorderly conduct the witness testified as follows:

"Q. Mr. Yancey, were there any evidence of disorderly conduct that you saw there? A. All up and down the booths they were loving and cursing. It was the worst place that I saw in the whole county. The drunks were cursing and talking very loud.

"Q. Mr. Yancey, is loving women disorderly

conduct? A. In the way they were doing, yes. I seen one man kissing a woman and loving her and he had his hand in the front of her dress. That was very vulgar in my estimation.

"Q. And did you see other instances? A. Yes, of running their hands in dresses. The biggest part of them were drinking beer.

"Q. Did you see alcoholic beverages sold or delivered to persons under the influence of intoxicating liquors? A. I saw several persons who were drunk purchase beer.

"Q. How were the purchases made? A. It was purchased over the bar or from the waitress herself who would bring it down to the booth and give them their change. The bartender never asked anyone any questions, or said anything to anyone about being drunk.

"Q. How were you able to form an opinion that these customers were intoxicated at the time they purchased beer? A. By their general actions, the stupor on their faces, their speech, which was not at all plain English, and sometimes staggering around.

"Q. What else did you see on these premises relating to these charges? A. There were slot machines there and men were playing them. That was about all I seen, other than what I have described."

It is insisted that since Yancey was a private investigator employed by the brewing foundation he was anxious to obtain convictions carrying a suspension or revocation of legal holders of licenses in order to keep his job, and for that reason his evidence should be given but very little weight since he was an interested and prejudiced witness. The witness was not impeached for truth and veracity or otherwise, and we know of no reason why the board should not have given his evidence such weight and consideration as it may have deemed proper.

It is next insisted that the witness was not competent to determine the age of persons whom he saw on the premises or their condition as to whether they were intoxicated. In 20 Am. Jur., section 876, page 736, it is said:

"Recognition of the fact that a person is in a drunken or intoxicated condition requires no peculiar scientific knowledge. Such recognition, however, is one of those matters which involves the statement of the impression or belief in the mind of the witness produced by various circumstances which cannot be made intelligible to the jury apart from the impression they create. It is practically impossible to describe the appearance of a person, his acts, gestures, looks, and other indications of a state of sobriety or of intoxication which make the impression upon one's mind as to whether a person is intoxicated. It is well established, therefore, that a witness who has had opportunity to observe the facts upon which he bases his opinion may give his opinion as to whether the person was intoxicated at the particular time in question."

In support of the text the case of Gourley v. Commonwealth, 140 Ky. 221, 131 S. W. 34, 48 L. R. A., N. S., 315, is cited. And, on the question of proving age (20 Am. Jur., section 826, page 695) the rule is thus stated:

"The age of a person may, when no better evidence can be given, be proved by family tradition or pedigree or by opinion evidence. The courts are practically agreed that a nonexpert witness who has had adequate opportunities for observation may, after describing a person as fully as possible, give his opinion as to such person's age. This rule has been applied in criminal, as well as civil, cases— as, for example, on prosecutions for selling liquors to minors or for rape, expert medical testimony being also admissible in the last mentioned class of cases to prove the age of the prosecutrix. A few cases deny the admissibility of nonexpert opinion as to age, where such opinion is based on appearances, but the courts taking this view have been unable to give any very satisfactory reason therefor. In several cases in which the opinions of witnesses upon the question might otherwise have been admitted, they have been refused because of the failure to state the appearances from which the opinions were drawn.

"Upon the question of the apparent minority or majority of third persons, it has been held, without

a dissenting voice, that the opinions of witnesses who have seen the persons are admissible.''

We think the evidence of the witness met the requirements of the rule stated in the authority supra, and was sufficient to support the finding of the board.

Appellant also insists that the hearing before the board was not held according to law because only two members of that body were present at the taking of the evidence. The statute does not require all the members of the board to be present at the taking of the evidence, and since two members constituted a majority of the board, their action was the action of the board. Also, on this complaint appellant is faced with the same obstacle relating to the alleged irregularities of the notices; namely, he made no timely objections to the evidence being taken before only two members of the board. Furthermore, the record disclosed that the whole board considered the evidence and passed upon it before the order of revocation was entered.

For the reasons stated, the judgment is affirmed.