Clyde WILSON, Jr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

May 20, 1977.

---

**570**

A. Norrie Wake, Wake & Vest, Lexington, for appellant.

Robert F. Stephens, Atty. Gen., Carl T. Miller, Jr., Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

Clyde Wilson, Jr., was indicted for murder, KRS 507.020, and convicted of manslaughter in the first degree, KRS 507.030, for shooting and killing his wife, Joyce Wilson. Wilson was sentenced to 20 years' imprisonment. We affirm.

The Commonwealth's version of the incident is that at the Wilson home, late at night, the children were awakened by the wife, Joyce Wilson, and told to go out-of-doors, behind the chicken house, for the reason that the husband, Clyde Wilson, Jr., "was drunk and raising the devil." Shortly thereafter, Joyce Wilson followed the children. Clyde Wilson then followed Joyce Wilson out of the house and they continued to argue. Clyde Wilson then told Joyce Wilson he was going to shoot her, pulled out a gun, and shot her.

Clyde Wilson's testimony is that he was intoxicated, and after sending the children out of the house, Joyce Wilson attacked him and was beating his head on the floor when he managed to extricate himself, grab his gun, and run out of the house. Wilson testified that his wife came out of the house toward him and he fired a warning shot into the air, that she did not stop, but came at him and then he shot her. He testified that he believed she had a weapon, that she weighed 195 pounds and he weighed 123

pounds, and there was no way for him to escape her. His plea was self-defense.

Wilson asserts error in that the trial court (1) excluded testimony that Joyce Wilson had threatened to kill him, (2) refused to admit into evidence a diagram of the scene prepared by defense counsel, and (3) permitted the Commonwealth to question him regarding prior occasions of shooting at his wife and children.

In support of his assertion of self-defense, Wilson attempted to introduce the testimony of two women, one of whom would have testified that Joyce Wilson stated in her presence, "I'm going to kill Clyde when he gets drunk," and the other "I'm going to kill Clyde," and that these statements were made one or two weeks before the homicide. The trial court declined to permit the prospective witnesses to testify to these statements on the ground that the threats were not communicated to Wilson.

■ Generally, as well as in this Commonwealth, it is a well-settled rule that on a plea of self-defense evidence of threats made by the deceased against the accused, though not communicated to the accused, are competent to show the state of mind of the deceased and may be heard by the jury for the purpose of determining who was the aggressor. *Carnes v. Commonwealth*, Ky., 453 S.W.2d 595 (1970); and *Wigmore on Evidence*, 3rd Ed., § 110, p. 546.

■ Wilson argues the trial court excluded a vital portion of his defense by refusing to permit the testimony of these two witnesses.

We agree that the testimony was erroneously excluded, but we are of the opinion that the proposed evidence was cumulative and the exclusion was not unfairly prejudicial.

On direct examination, we see that Wilson testified as follows:

"Q. Had she ever threatened to kill you before?

"A. I just took that for a joke. I'd heard that a million times that she was going to kill me one of these

days. I didn't pay no attention to it.

"Q. When did she say that?

"A. Get into an argument or something like that. I always give into her pretty much. I always let her quarrel, and when she got big enough to handle me she just took over. I usually give in to her on just about everything; just about everything I'd give in to her and let her have her way."

A similar situation was presented in *McQueen v. Commonwealth*, Ky., 393 S.W.2d 787 (1965).

 During the course of cross-examining a witness for the Commonwealth, counsel for Wilson used a roughly drawn diagram of the premises for the purpose of testing the credibility of the witness by the physical location of objects and buildings and the position of the deceased and accused. At the conclusion of the examination, the trial court refused to admit the sketch into evidence. Wilson argues that the interrogation of the witness and his testimony as to positions of the deceased and the accused was impeached by the use of this diagram.

We are of the opinion that the introduction of the diagram into evidence was in the sound discretion of the trial court, and we see no abuse of discretion. The use of this type diagram as well as the use of a blackboard to illustrate a scene can be helpful to the jury in understanding the testimony. However, a diagram such as the one here does not stand in the same position as a duly authenticated plat, map, or photograph. The jury heard the witness, had the benefit of the diagram used in cross-examination, and we see no prejudice to Wilson in excluding the diagram as a formal exhibit.

The cross-examination of Wilson by the Commonwealth with regard to prior occasions he had shot at the deceased were denied by Wilson. We regard these questions as improper. A review of the evidence in this respect convinces us that in the context of the examination the questions were not unfairly prejudicial.

As to the complaint about the lie detector test, Wilson injected this element into the testimony by saying he would take a lie detector test. In answer to a question if he had taken a lie detector test, he replied that he had not. He was not prejudiced by this facet of the cross-examination.

The judgment is affirmed.

All concur.