Ancil Ray CROWE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1999–SC–1097–MR.

Supreme Court of Kentucky.

Feb. 22, 2001.

Robert E. Harrison, Martha Blair Harrison, Bowling Green, for Appellant.

A.B. Chandler, III, Attorney General, Kent T. Young, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

COOPER, Justice.

On the night of February 28—March 1, 1997, a rainstorm occurred in Warren County that was so severe as to cause flooding conditions. On the morning of March 1, Leisha Crowe was found dead inside her own vehicle which was submerged in the Barren River. According to the state medical examiner, the cause of death was blunt force trauma, specifically that the victim was struck eight times in the head by an instrument which could have been a hammer, a tire iron, or the like. The murder weapon was never found. The victim's husband, Appellant Ancil Crowe, was indicted by a Warren County Grand Jury for her murder. The Commonwealth's theory of the case was that Leisha Crowe informed Appellant on the night of February 28th that she intended to divorce him, that Appellant killed her in the recreation room of their home, and that he attempted to dispose of her body by placing it in the vehicle which he then pushed or drove into the river. The first trial resulted in a deadlocked jury. At a second trial, Appellant was convicted of manslaughter in the first degree and sentenced to twenty years in prison. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), asserting eight claims of error.

## I. SUFFICIENCY OF THE EVIDENCE.

There was evidence that the degree of trauma inflicted upon the victim would have caused extensive bleeding; yet, no trace of blood was found in the recreation room where the murder was supposed to have occurred. The Commonwealth theorized that Appellant cleaned the blood from the carpet, furniture, etc., with a rinse vacuum machine ("rinse vac") which he rented from a local grocery store on the morning of March 1. Appellant gave a statement to the police in which he claimed that he went to bed at 10:00 p.m. and when he awoke the next morning, his wife and her vehicle were gone. He also claimed that he rented the "rinse vac" to clean up water which had flooded into the house during the storm.

A trace of blood was found inside the hose of the "rinse vac," but it could not be identified as human blood, much less that of the victim. Two trace stains of the victim's blood were found on a pair of blue jeans in Appellant's bedroom. The exact age of the stains could not be determined, but they could have been as much as eight months old. Barry Flora, a family friend and paramedic, testified that he visited Appellant's home at 9:00 a.m. on March 1 and observed what appeared to him to be a spot of blood the size of a golf ball on the kitchen floor; but that when he returned after leaving the room, the substance was gone. He testified that Appellant was alone in the kitchen in the interim.

Two attorneys testified that Leisha Crowe had contacted their offices and inquired about obtaining a divorce. Two of

the victim's co-workers testified that she had told them she was going to divorce Appellant, and that she made statements to them on February 28th from which a jury could infer that she intended to inform Appellant that night of her intent to divorce him. Appellant's ex-wife, Beverly Vanmeter, testified that she called the Crowe residence at 9:47 p.m. on February 28th and talked to Leisha Crowe about picking up her children.

■ Thus, the Commonwealth presented evidence that Appellant had both the motive and opportunity to kill his wife; that on the morning after his wife's disappearance, he went to a grocery store and rented a "rinse vac" to clean up something in his house; that a trace of blood was subsequently found in the hose of the rinse vac; that traces of the victim's blood were found on Appellant's clothing; and that a witness observed what appeared to be blood on the kitchen floor of Appellant's residence, and Appellant apparently removed it while the witness was in another room. This evidence, while circumstantial, was sufficient to induce a reasonable juror to believe beyond a reasonable doubt that Appellant killed his wife. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991); *Ford v. Commonwealth*, Ky., 665 S.W.2d 304, 309 (1983), *cert. denied*, 469 U.S. 984, 105 S.Ct. 392, 83 L.Ed.2d 325 (1984).

## II. HEARSAY.

Two co-workers of the victim, Sharleda Davis and Sharon Harper, testified that the victim had told them within days of her death that she intended to divorce Appellant. Davis additionally testified that on the afternoon of February 28, 1997, the victim told her: "Tonight's the night. I'm going to tell him." Harper additionally testified that the victim had told her she was awaiting receipt of an income tax refund check; and that on the afternoon of February 28, 1997, the victim said: "Oh, I forgot to tell you. I finally got my money."

The Commonwealth also presented the testimonies of two local attorneys, Kelly Thompson and Nancy Roberts. Thompson testified that on August 13, 1996, almost seven months prior to the murder, the victim came to his office and talked with him about "the possibility of divorce." Roberts testified that on February 11, 1997, her secretary told her that a person identifying herself as Leisha Crowe had telephoned the office to discuss obtaining a divorce. In support of his pretrial motion to suppress Roberts's testimony, Appellant filed the affidavit of the secretary to the effect that she "did not know Leisha Crowe to recognize her voice and [had] no knowledge if it was she who called."

■ This hearsay testimony was offered to prove inferentially that the victim told Appellant on the night of February 28, 1997 that she wanted a divorce and that such was Appellant's motive for killing her. The testimony was offered to prove the truth of the matters asserted, *i.e.*, that the victim wanted a divorce and intended to inform Appellant of that fact on the night she was killed. The Commonwealth does not claim that the testimony had any legitimate nonhearsay use.

> A legitimate nonhearsay use of an out-of-court statement always involves relevancy in the *mere utterance of the words* comprising the statement (i.e., a logical connection between the utterance of the words and some material element of the case). Absent such relevancy, a claim of nonhearsay must be regarded as nothing more than a pretext for violating the hearsay rule.

*Moseley v. Commonwealth*, Ky., 960 S.W.2d 460, 461–62 (1997) (quoting R. Lawson, *The Kentucky Evidence Law Handbook* § 8.05 at 361 (3d ed. Michie 1993)). This evidence was admissible only if it were within the scope of KRE 803(3), the state-of-mind exception to the hearsay rule; and even if it were within the scope of that exception, it was still inadmissible if so rendered by other provisions of the

Kentucky Rules of Evidence. *Cf. Moseley, supra,* at 461.

■ Evidence that the victim wanted a divorce and intended to inform her husband of that fact is within the scope of KRE 803(3), because declarations of present intent cast light upon future as opposed to past events. *Moseley, supra,* at 462 (citing *Shepard v. United States,* 290 U.S. 96, 105–106, 54 S.Ct. 22, 26, 78 L.Ed. 196 (1933)). The testimonies of Davis and Harper tended, at least inferentially, to prove the victim's intent to inform Appellant on the evening of her death that she wanted a divorce. *Wilson v. Commonwealth,* Ky., 551 S.W.2d 569–570 (1977) (statements showing the victim's threats to kill the defendant were admissible to prove the victim was the initial aggressor); *see also Brock v. Commonwealth,* Ky., 947 S.W.2d 24, 29 (1997).

■ For the same reason, the testimony of attorney Thompson was also within the scope of KRE 803(3). However, because of the temporal remoteness of the victim's contact with Thompson and the lack of specificity as to the actual statements made to him by the victim, his testimony was not nearly as devastating to Appellant as was that of attorney Roberts, who claimed that the victim contacted her office about a divorce within three weeks before her death. Although the statements attributed to the caller by Roberts's secretary fell within the scope of KRE 803(3), Roberts's testimony was clearly inadmissible, because (1) there was no authentication that the person who made the statements was the victim, and (2) her testimony constituted impermissible double hearsay.

KRE 901(b)(6) provides that a telephone conversation is properly authenticated when an *outgoing* call is made to a number assigned at the time by the telephone company to a particular place or business and if:

(A) In the case of a person, circumstances, including self-identification, show the person answering to be the one called; or

(B) In the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

■ That provision, which permits authentication by self-identification, does not apply here, since the telephone call was *incoming,* not *outgoing.* Identification of a party to an *incoming* telephone call is authenticated if the recipient of the call recognizes the voice of the caller or is otherwise able to connect the voice with the caller. However, self-identification by the caller is insufficient. *Lawson, supra,* § 7.10, at 324–25.

KRE 901(b)(5) provides that voice identification is authenticated, "whether heard first-hand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." KRE 901(b)(5) has no application here, because Roberts's secretary did not know Leisha Crowe, did not recognize her voice, and was otherwise unable to connect the voice with the victim. Thus, Roberts's testimony was inadmissible because the telephone conversation was not properly authenticated under Article IX of the Kentucky Rules of Evidence.

■ But even if the call to Roberts's office had been properly authenticated, Roberts's testimony as to what her secretary told her about what the caller had told the secretary was double hearsay; and double hearsay is admissible only if each out-of-court statement falls within a recognized exception to the hearsay rule. KRE 805. Even though the caller's statement to the secretary fell within the scope of KRE 803(3), there is no hearsay exception which would allow Roberts to testify to what the secretary told her. *Compare Thurman v. Commonwealth,* Ky., 975 S.W.2d 888, 893 (1998), *cert. denied,* 526 U.S. 1009, 119 S.Ct. 1150, 143 L.Ed.2d 217

(1999), *and Askew v. Commonwealth*, Ky., 768 S.W.2d 51 (1989).

The testimony of attorney Roberts was not merely cumulative. Thompson's nonspecific testimony concerning his consultation with the victim seven months prior to her death was substantially less probative than the testimony of Roberts that the victim contacted her office about a divorce within three weeks before her death; and the testimony of the two co-workers that the victim wanted a divorce was substantially less probative than the testimony of Roberts that the victim had taken the additional step of consulting her office about actually filing for divorce. Of course, absent evidence that the victim intended to divorce Appellant, the statements she made to her co-workers on the date of her death were innocuous and had no tendency at all to prove that Appellant had a motive to kill her. Thus, the admission of Roberts's testimony was not only improper, but highly prejudicial.

This was a close case based entirely upon circumstantial evidence. A previous trial had, in fact, resulted in a deadlocked jury. This is not a case where the evidence of guilt was so overwhelming that it could be said that the improper introduction of prejudicial evidence would not have changed the result. Thus, the improper admission of Roberts's testimony requires reversal for a new trial. Because the other claims of error are likely to recur at retrial, they will also be addressed in this opinion. *Springer v. Commonwealth*, Ky., 998 S.W.2d 439, 445 (1999).

### III. LAY OPINION TESTIMONY.

Appellant asserts that Barry Flora was unqualified to render an opinion that the substance he saw on Appellant's kitchen floor was blood. Actually, Flora did not opine that the substance was blood; he only stated that it appeared to him to be blood, *i.e.*, it looked like blood. His testimony was rationally based on his own perception of what he personally observed and was helpful in determining a fact in issue, *viz:* whether Appellant attempted to conceal the fact that there was blood inside his residence. KRE 701. Flora's testimony was just as admissible as that of the witness in *Howard v. Kentucky Alcoholic Beverage Control Board*, 294 Ky. 429, 172 S.W.2d 46 (1943), who testified that another person was intoxicated; or that of the witness in *King v. Ohio Valley Fire & Marine Insurance Co.*, 212 Ky. 770, 280 S.W. 127 (1926), who testified that when he arrived at the scene of a fire, he "smell[ed] gasoline."

### IV. BLOOD IN THE "RINSE VAC."

Appellant asserts it was error to permit the Commonwealth to introduce evidence that a trace of blood was found in the rinse vac, because the Commonwealth could not prove that it was human blood, much less the victim's blood. However, since it was the Commonwealth's theory that Appellant had cleaned the victim's blood from his residence with the rinse vac, the fact that blood was found in the rinse vac was at least circumstantial evidence relevant to that theory. The trial judge did not abuse his discretion in determining that the probative value of this evidence was not substantially outweighed by its prejudicial effect. KRE 403; *Commonwealth v. English*, Ky., 993 S.W.2d 941, 945 (1999).

### V. BLOOD ON APPELLANT'S CLOTHING.

Appellant does not claim that evidence of traces of the victim's blood on his clothing was irrelevant. He claims that the evidence should have been suppressed because police investigators had discarded the victim's bloody clothing, believing it had no probative value. Appellant's theory is that the jury could have inferred from the substantial amount of blood on the victim's clothing that the trace stains on his own clothing did not result from the same occurrence. To warrant any relief, Appellant was required to demonstrate bad faith on the part of the police. *Ari-*

*zona v. Youngblood,* 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988); *Kirk v. Commonwealth,* Ky., 6 S.W.3d 823 (1999). At best, Appellant would have been entitled to a "missing evidence" instruction, *Collins v. Commonwealth,* Ky., 951 S.W.2d 569, 573 (1997), which he did not request.

## VI. SUPPRESSION OF SCIENTIFIC DEMONSTRATION.

Jack Sammons, a chemist, testified for Appellant that the rinse vac used by Appellant on March 1, 1997 could not have removed all traces of blood from the carpet in Appellant's recreation room. He had proved this by an out-of-court experiment which he proposed to repeat in the presence of the jury. The trial court sustained the Commonwealth's objection on grounds that since the Commonwealth had no notice of the proposed demonstration, it would be "unfair" to permit it. No reciprocal discovery order was entered in this case, RCr 7.24(3)(A), and we are unaware of any other rule requiring a defendant in a criminal case to disclose his trial strategy to the prosecutor prior to trial. Obviously, if Sammons could demonstrate to the satisfaction of the jury that it would have been impossible to remove all traces of blood with the rinse vac, the fact that the investigative officers found no trace of blood in Appellant's recreation room would take on added significance. Regardless, since this case is being reversed for a new trial, the prosecutor now has ample notice of Sammons's proposed demonstration and "unfairness" will not preclude the jury from seeing this evidence.

## VII. INSTRUCTIONS.

 Appellant tendered instructions on second-degree manslaughter and reckless homicide as lesser included offenses. Generally, an instruction on a lesser included offense is authorized only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense. *Tamme v. Commonwealth,* Ky., 973 S.W.2d 13, 37 (1998), *cert. denied,* 525 U.S. 1153, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999). The evidence in this case was that the victim was killed by being struck eight times in the head with a weapon similar to a hammer. Appellant's defense was an alibi. There was no evidence from which a reasonable juror could believe that he unintentionally killed his wife. *Id.; Foster v. Commonwealth,* Ky., 827 S.W.2d 670, 678 (1991), *cert. denied,* 506 U.S. 921, 113 S.Ct. 337, 121 L.Ed.2d 254 (1992).

## VIII. ALLEGED COMMENT ON SILENCE.

 Appellant had given a statement to the police in which he denied killing his wife. During closing argument, the prosecutor twice referred to Appellant's denial as an "unsworn statement." Appellant claims this was an indirect comment on the fact that he did not testify at trial. The test concerning indirect comments is "whether the comment is reasonably certain to direct the jury's attention to the defendant's exercise of his right to remain silent." *Sholler v. Commonwealth,* Ky., 969 S.W.2d 706, 711 (1998). The admission of the statement allowed Appellant to deny killing his wife without being subjected to cross-examination. The prosecutor was entitled to attack the credibility of that statement by pointing out that it was unsworn. He did not comment in any way about Appellant's failure to testify. We do not believe these comments were reasonably certain to direct the jury's attention to the defendant's exercise of his right to remain silent.

Accordingly, the judgment of conviction and the sentence imposed upon Appellant are reversed, and this case is remanded to the Warren Circuit Court for a new trial in accordance with the contents of this opinion.

LAMBERT, C.J., GRAVES and STUMBO, JJ., concur.

KELLER, J., dissents by separate opinion in which JOHNSTONE and WINTERSHEIMER, JJ., join.

KELLER, Justice, dissenting.

Although I agree that the trial court erroneously permitted Roberts to testify to inadmissible hearsay, I dissent from the majority because I do not believe that the introduction of this evidence warrants the reversal of Crowe's conviction.[1]

The majority opinion correctly notes that the Commonwealth's case consisted exclusively of circumstantial evidence. This, however, did not preclude the Commonwealth from establishing a powerful case against Crowe. After examining the other evidence in the record, I do not believe that "there is a substantial possibility that the result would have been any different"[2] if the trial court had excluded the Roberts hearsay testimony. In my opinion, the majority reaches a contrary conclusion because it considers the fact that a prior trial of this indictment resulted in a hung jury as evidence that the Commonwealth's proof of Crowe's guilt was tenuous. A jury's inability to reach a verdict, however, may mean nothing more than one (1) juror possessed reasonable doubts about the defendant's guilt or, as is equally likely in this case, degree of guilt. I find this Court's conclusions about the possible prejudice from the Roberts hearsay testimony suspect to the extent they rely upon speculation about the reasons for a hung jury at a different trial with different evidence instead of the record now before us.

Medical testimony established that Leisha Crowe's death resulted from blunt force trauma in the form of eight (8) blows to her head with a foreign object such as a hammer or crowbar. Evidence from both the prosecution and defense suggested that Leisha Crowe's wounds would have bled profusely, and the Commonwealth introduced evidence that: (1) two blood spots found on a pair of the appellant's blue jeans positively matched Leisha Crowe's DNA; (2) forensics found blood inside a "rinse vac" rented by the appellant the day after his wife disappeared; and (3) the appellant quickly cleaned up a substance on his kitchen floor, believed to be blood, when a visitor in his home took notice of it.

The Commonwealth also introduced evidence of atypical behavior on the part of the appellant in the course of the investigation of Leisha Crowe's homicide. Ancil Crowe's description of why his wife had left their home the night she disappeared became more vague when attempts were made to verify the initial information. Ancil Crowe made no inquiries regarding the nature of his wife's injuries when informed by the investigating detective that his wife was killed. Although two witnesses testified that they observed fresh, asymmetrical scratches on the appellant's face and right hand, Crowe initially denied having the scratches at all, but then introduced evidence at trial that the scratches came from the family dog.

In support of its theory that the appellant killed his wife after she informed him she intended to divorce him, the Commonwealth introduced testimony from two of Leisha Crowe's co-workers documenting the appellant's wife's stated intention, on

---

**1.** *See* RCr 9.24:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order, or in anything done or omitted by the court or by any of the parties, is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.
*Id.*

**2.** *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949, 952 (1969).

the day of her death, to inform her husband of her desire to divorce him. A local attorney testified that Leisha Crowe had met with him some months previously to discuss divorce options. Although the majority asserts that the erroneously admitted testimony from another attorney, Roberts, was highly prejudicial because it suggested another, more recent, contact with a divorce attorney, I see the testimony as largely cumulative. Although Ancil Crowe made a token attempt during the cross-examination of Leisha Crowe's co-workers to suggest that some doubt existed as to exactly what the appellant's wife intended to "tell him" on the night of her death, the context of those statements is inescapable, and the appellant made no serious attempt to contest the fact that his wife intended to leave him. In my opinion, the Roberts testimony may have made the co-workers statements marginally more credible, but did not seriously influence the result in this trial. Cumulative, undisputed evidence represents the epitome of harmless error.[3]

I would affirm the judgment of the Warren Circuit Court.

JOHNSTONE and WINTERSHEIMER, JJ., join this dissent.

---

3. *See Bruce v. Commonwealth,* Ky., 441 S.W.2d 435, 438 (1969) ("[T]his evidence, even if erroneously admitted, could not have been prejudicial because it was cumulative in character and concerned incidental matters about which there was no dispute. R.Cr. 9.24." *Id.*); *Patterson v. Commonwealth,* Ky. App., 555 S.W.2d 607, 609 (1977) (hearsay evidence cumulative and nonprejudicial).