

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1214-11

**JASON THAD PAYNE, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE TWELFTH COURT OF APPEALS
## WOOD  COUNTY

**COCHRAN, J., filed a concurring opinion.**

O P I N I O N

I join the majority opinion.  I write separately only to elaborate on why the error in admitting Nichole Payne's out-of-court statements to her best friend, Sarah Hawthorne, was harmful.  Sarah's testimony that Nichole (1) told her that appellant had threatened to kill Nichole the night before she was shot; (2) had previously told Sarah that appellant "threatened to burn her alive in the house"; and (3) "begged" Sarah "to avenge her if something happened to her" was inadmissible hearsay.  The only issue before us is whether

that testimony could be considered harmless.

A witness who testifies to what the murder victim said before her death frequently gives extraordinarily powerful testimony: The jury hears the victim's Cassandra-like voice rising from the grave predicting her own death, detailing past abuses, and pointing the finger of blame at the defendant. The problem in this case was that the jury heard the voice of what the defense called the "avenging angel" of Sarah Hawthorne,[1] not the words from Nichole herself. Nichole cannot now be asked about her words and their context. This is an example of classic inadmissible hearsay.

The court of appeals was correct in concluding that this case hinged upon which theory, defense or State, the jury believed. According to the defense theory, Austin, appellant's stepson, killed his mother, Nichole, and then shot himself. According to the State's theory, appellant shot and killed them both. Each theory was supported by circumstantial evidence, neither was established by direct evidence.

To prove its theory, the State relied on evidence of appellant's motive to kill Nichole

---

[1] The defense argued,

> The only thing we have to say that was a lie was the State's avenging angel, Sarah Hawthorne, who came to tell all of these things that–he's going to burn her in the house, she has to hide in the closet to make a phone call. It's almost a nightmare scene over there according to Sarah Hawthorne, but, again–and this time, it's Nichole's actions that are speaking so loudly that we can't hear Sarah Hawthorne.

Defense counsel argued that Nichole had her own car, she had her own business, she came and went freely, and other witnesses had testified that this was a normal household. According to the defense, the State was asking the jury to believe a woman who "in her almost hysterical state said that she had vowed to avenge Nichole's death," implying that Sarah Hawthorne had "imagined" false words into the dead woman's mouth.

and the lack of any motive for Austin to kill either his mother or himself. Thus, evidence that Nichole told her best friend that appellant had previously threatened to kill her–and had done so on more than one occasion–was extremely powerful evidence in support of the State's theory. It was powerful, but it was also highly prejudicial. Courts rarely conclude that such hearsay "statements from the grave" by the murder victim are harmless error.[2]

---

[2] *See, e.g. Jones v. State*, 515 S.W.2d 126, 129 (Tex. Crim. App. 1974) (out-of-court statement by murder victim, defendant's husband, three years before killing that he believed defendant was unfaithful to him was inadmissible to show deceased's state of mind and was prejudicial error); *Dorsey v. State*, 24 S.W.3d 921, 928 (Tex. App.–Beaumont 2000, no pet.) (witness's testimony that murder victim said she was thinking of leaving the defendant–her husband–and wanted the name of a divorce lawyer was admissible under Rule 803(3) because it showed her future intent to leave defendant, but testimony that the victim had said that if anything "strange happened to me, like a car crash," it meant that the defendant had killed her was an inadmissible statement of past belief; additional out-of-court statements by the deceased victim that the defendant had held her down on the bed with a knife to her throat, had held a gun to her head, and had put a gun in her mouth were inadmissible because they were memories of past events; in this circumstantial-evidence case, in which the State wove "a story of abuse and fear," the error was harmful); *Barnum v. State*, 7 S.W.3d 782, 789-91 (Tex. App.–Amarillo 1999, pet. ref'd) (trial court reversibly erred in admitting a writing signed by the deceased which, among other things, stated that she believed that the defendant was planning on murdering her to collect the proceeds of her life insurance); *Vann v. State*, 853 S.W.2d 243, 249-50 (Tex. App.–Corpus Christi 1993, pet. ref'd) ( manslaughter victim's out-of-court statement that he "wouldn't be surprised if [defendant–his wife] was waiting for me at home with a gun and shot me" was inadmissible under Rule 803(3) and harmful error); *see also Crow v. State*, No. 07-00-0144-CR, 2001 WL 883006, at *7-8 (Tex. App.–Amarillo Aug. 7, 2001, pet. ref'd) (not designated for publication) (reversible error to admit deceased victim's out-of-court statements that defendant had given her a black eye and busted lip in a circumstantial-evidence murder case in which defense was that deceased was the first aggressor); *Camm v. State*, 908 N.E.2d 215, 225-28 (Ind. 2009) (reversible error to admit murder victim's out-of-court statement that she expected her husband–the defendant–home about 7:30 on the evening she and her children were murdered because evidence of defendant's alibi was conflicting and wife's statement was critical in placing defendant at home when murder occurred); *People v. Smelley*, 775 N.W.2d 350, 358-59 (Mich. Ct. App. 2009) (reversible error to admit murder victim's out-of-court statements that defendant was after him and trying to kill him when only admissible evidence linking defendant to murder was witness who testified he heard shots being fired as defendant's car passed in the opposite direction), *vacated in part on other grounds*, 776 N.W.2d 310 (Mich. 2010); *Blair v. Commonwealth*, 144 S.W.3d 801, 805-06 (Ky. 2004) (reversible error in murder case to admit

In this case, the circumstantial evidence was not overwhelming, and Sarah Hawthorne's testimony was not cumulative of other, similar testimony. Furthermore, the State emphasized the inadmissible testimony during its summation of the evidence. Close to the beginning of his closing argument, the prosecutor noted that appellant had lied to the officers when he told them that his marriage was good. Then he explained how the jury knew that was a lie:

> We know one thing, that Nichole Payne was unhappy, the most unhappy she had been in all of her life. She wanted to get a divorce, that this Defendant had threatened to kill her and threatened to burn her alive in her own house. Do you remember that? Sarah Hawthorne told you that. One of the conversations was the day before this Defendant killed Nichole Payne and Austin Taylor Wages. Did you see how emotional that young lady was? Absolutely almost on the verge of crying.

From there, the prosecutor talked about the couple's financial problems and other circumstantial evidence of appellant's motive to murder Nichole.

During his final argument, the prosecutor again brought up Nichole's out-of-court

---

testimony by victim's friend that victim had told him she had plenty of money to pay for dental work and did not need to wait for check because that testimony supported the inference that money found in defendant's possession on morning of murder had been stolen from victim.); *Crowe v. Commonwealth*, 38 S.W.3d 379, 383-84 (Ky. 2001) (reversible error to admit out-of-court telephone statement made by murder victim three weeks before her death to divorce attorney's secretary that victim wanted to discuss obtaining a divorce when conviction was based on circumstantial evidence, evidence was not overwhelming, and inadmissible testimony was powerful evidence of defendant's motive); *compare Navarro v. State*, 863 S.W.2d 191, 197 (Tex. App.–Austin 1993, pet. ref'd) (admission of deceased victim's statements that the defendant, her live-in boyfriend, had "put a gun to her head and threatened to kill her" was error, but harmless considering the overwhelming undisputed evidence that the defendant had a violent character and had repeatedly threatened the deceased with a gun, sometimes hit her with the gun, once had choked her until she was unconscious).

statements in commenting on appellant's lack of credibility:

> He lied that day [to the police]. He said he had a good marital relationship. And Nichole had told several people she wanted a divorce, she was afraid, she had to have conversations with her family from a closet or she had to get out of the house to have a conversation, that she feared him, that if something happened to her, that her family was to avenge her[.]

Given the circumstantial nature of this case, the power of Nichole's "words from the grave," and the State's emphasis on Sarah's testimony about Nichole's out-of-court statements, I agree that the error in admitting those statements cannot be considered harmless. They were devastating to the defense theory of the case, and they formed the core of the State's theory concerning appellant's motive to kill his wife and stepson.

Filed: February 27, 2013
Do Not Publish