Forrest MOSELEY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 96–SC–306–MR.

Supreme Court of Kentucky.

Nov. 20, 1997.

Rehearing Denied March 19, 1998.

Franklin P. Jewell, Jewell & Lemke, Louisville, for Appellant.

A.B. Chandler, III, Attorney General, Courtney A. Jones, Assistant Attorney General, Frankfort, for Appellee.

## OPINION

COOPER, Justice.

Appellant was convicted in the Daviess Circuit Court of wanton murder and sentenced to confinement in the penitentiary for twenty-eight years. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

On January 31, 1995, Appellant shot and killed Mary Yvett Fuqua Norris with whom he was then cohabiting. His defense was that the shooting was accidental. To prove otherwise, the Commonwealth presented a series of witnesses to testify to statements made to them by the victim before her death. Elizabeth Creamer testified that on the day before her death, the victim told her that Appellant had stabbed her in the leg and had bitten her. Alice Burden testified that a few days prior to her death, the victim told her that Appellant had stabbed her in the leg. Burden also testified that on the day before the victim's death, she observed red marks on the victim's leg, and that the victim told her that Appellant had caused the injuries. Burden also testified that in 1994, the victim told her that Appellant had "beaten her up." Angela Phillips testified that in June or July 1994, the victim told her that Appellant had beaten her up and hit her with a gun, breaking her tooth. Phillips also testified that in August 1994, the victim told her that Appellant had caused bruises on her chest and upper thigh.

During rebuttal, Nadine Ranson and Cathy Evans testified that before her death, the victim told each of them separately that Appellant had beaten her, causing her to limp. Sally Kell testified that the victim told her over the phone in June 1994 that Appellant had hit her. Kell also testified that one week before her death, the victim told her that Appellant had beaten her and dragged her into a car.

■ Evidence that Appellant had abused his victim on prior occasions was relevant to prove the absence of accident or mistake when he subsequently killed her. KRE 404(b)(1); *Smith v. Commonwealth*, Ky., 904 S.W.2d 220, 224 (1995). However, to be admissible, the statements must satisfy not only Article IV (Relevancy), but also Article VIII (Hearsay) of the Kentucky Rules of Evidence. Clearly, the witnesses could testify to what they observed insofar as such was relevant. The issue is whether they could testify to what they were told.

■ The Commonwealth candidly and correctly admits that all of the statements in issue are hearsay, because they are out-of-court statements offered to prove the truth of the matters asserted, *i.e.*, that Appellant physically abused his victim in the past, from which it can be inferred that her subsequent death was not accidental. KRE 801(c). The statements have no legitimate nonhearsay use.

A legitimate nonhearsay use of an out-of-court statement always involves relevancy in the *mere utterance of the words* com-

prising the statement (i.e., a logical connection between the utterance of the words and some material element of the case). Absent such relevancy, a claim of nonhearsay must be regarded as nothing more than a pretext for violating the hearsay rule.

R. Lawson, *The Kentucky Evidence Law Handbook*, § 8.05, p. 361 (3rd ed., Michie, 1993).

■ The statements do not fall within the category of nonhearsay statements tending to prove state of mind. The victim's mental state at the time of her death is not an issue in this case. Nor are the statements probative of Appellant's mental state, since he was not the recipient of the statements. *Id.* at 364–65.

■ The Commonwealth posits that the statements fall within the state of mind exception to the hearsay rule. KRE 803(3). However, the statements were offered to prove *Appellant's* state of mind and KRE 803(3), by its very language, only applies to prove the state of mind of the *declarant, i.e.,* the victim in this case.

The following are not excluded by the hearsay rules, even though the declarant is available as a witness:

. . .

(3) . . . A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed. . . .

KRE 803(3) (emphasis added).

■ Even if the statements had been offered to prove the declarant's state of mind, they would have been excluded by the "memory or belief" clause of the exception. The purpose of this clause is to codify the ruling contained in the famous United States Supreme Court decision of *Shepard v. United States*, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933).

The evidence in *Shepard* was a statement by an alleged victim of homicide accusing the defendant of taking steps to bring about her death—"Dr. Shepard has poi-

soned me." The trial judge admitted the statement as a dying declaration, without adequate proof that it had been made under consciousness of impending death. The Court of Appeals found error in the trial court's reasoning below but not in its ruling on admissibility; the statement, said the Court, was admissible to show the state of mind of the declarant. The Supreme Court of the United States disagreed, ruling that the state of mind exception may not be used to admit into evidence a statement of belief or memory for the purpose of proving the act, event, or occurrence that generated the belief or memory. In its opinion, the Court provided the following explanation:

Declarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored.

Lawson, *supra*, § 8.50, p. 437, quoting from *Shepard v. United States, supra*, 290 U.S. at 105, 54 S.Ct. at 26, 78 L.Ed. at 202.

The hearsay rule has its origin in the Confrontation Clause of the Sixth Amendment. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *see generally*, Lawson, *supra*, § 8.00, pp. 354–57. Thus, we are bound by *Shepard v. United States, supra*, as embodied in KRE 803(3). *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965) (Sixth Amendment right of an accused to confront the witnesses against him made obligatory on the states by the Fourteenth Amendment).

Since the victim's out-of-court statements were hearsay and do not fall within any applicable exception to the hearsay rule, this case must be reversed for a new trial. Because the case must be retried, we will address Appellant's other claim of error.

■ Detective Keith Cain was permitted to testify that Appellant gave four inconsistent statements as to how the shooting occurred. In fact, Appellant did not make the statements to Cain, but to four separate members of the Mosleyville Fire Depart-

ment, who arrived on the scene shortly after the shooting. The inconsistent statements were relayed to Cain by one of the firemen and by an investigating police officer who did not testify. Appellant argues that Cain's testimony amounted to "investigative hearsay," which we condemned in *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534 (1988). However, unlike *Sanborn,* in which the out-of-court statements were made by *non-testifying* witnesses, the persons to whom the statements were made in this case testified to the statements and were subject to cross-examination. The statements were properly admitted as admissions under KRE 801A(b)(1). However, Cain's repetition of the statements was hearsay and should be excluded upon retrial.

For the reasons stated in this opinion, the judgment of conviction and the sentence imposed upon Appellant are reversed and this case is remanded to the Daviess Circuit Court for a new trial.

STEPHENS, C.J., and LAMBERT and STUMBO, JJ., concur.

JOHNSTONE, J., dissents by separate opinion, with GRAVES and WINTERSHEIMER, JJ., joining that dissent.

JOHNSTONE, Justice, dissenting.

I respectfully dissent because I disagree with the majority's analysis and conclusion concerning Norris's statements that identify Moseley as her abuser.

It is undisputed that Forrest Moseley shot and killed Mary Yvett Fuqua Norris. The only issue at trial was Moseley's state of mind at the time of the shooting. A number of witnesses testified that, on several different occasions prior to her death, Norris exhibited observable manifestations of physical abuse and that Norris contemporaneously identified Moseley as her abuser. The majority correctly states that, in a case of this nature, evidence of ongoing physical abuse is relevant and admissible as immediate circumstances that bear directly on the events leading to the tragedy. *Dye v. Commonwealth,* Ky., 477 S.W.2d 805, 807 (1972). However, the majority goes on to hold that it was a

constitutional error to admit this evidence simply because the threads connecting the victim to her abuser were Norris's own out-of-court statements identifying Moseley as the person responsible for her beatings and abuse.

In *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the United States Supreme Court made clear that the Confrontation Clause of the Sixth Amendment cannot be read so literally as to bar the admission of all out-of-court statements, and that, while they protect similar values, the Confrontation Clause's prohibitions do not equate with the general prohibition against hearsay. *Id.* at 814, 110 S.Ct. at 3145–46, 111 L.Ed.2d at 651. The standard for the admission of hearsay set forth in *Wright* is that the proponent of the statement must show: 1) that the declarant-witness is unavailable to testify; and 2) that, after a witness is shown to be unavailable, the witness's out-of-court statement is admissible only if it bears a sufficient indicia of reliability. *Id.* at 814, 110 S.Ct. at 3145–46, 111 L.Ed.2d at 651–52. The Court then explained that if the statement does not fall within a firmly rooted hearsay exception, it must be excluded absent a showing of particularized guarantees of trustworthiness. *Id.* at 815, 110 S.Ct. at 3146–47, 111 L.Ed.2d at 652. The Court further explained that "particularized guarantees of trustworthiness" must be shown from a totality of the circumstances, and that "the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 819, 110 S.Ct. at 3148, 111 L.Ed.2d at 655.

The issue in *Wright* was whether certain statements were admissible under Idaho's catch-all hearsay exception. There is no catch-all or residual hearsay exception in Kentucky. Lawson, *The Kentucky Evidence Law Handbook,* 3d ed., § 8.90 at 505. As pointed out by the majority, the statements admitted against Moseley do not fall under any of the hearsay exceptions set forth in the Kentucky Rules of Evidence. Absent a discussion of admissibility under *Wright,* I believe that it would have been more prudent for the majority to have excluded Norris's

statements on the grounds that the statements do not fall under any recognized hearsay exception rather than excluding them on constitutional grounds. *See Rice v. Walls,* 213 F.2d 693, 697 (6th Cir.1954) ("[I]f a case can be disposed of on the non-constitutional issue without ruling on the constitutional issue involved, a ruling on the constitutional issue should be avoided.").

Without going into detail, I believe that the statements attributed to Norris in this case satisfy the standard set forth in *Wright.* Further, I would find Norris's out-of-court statements admissible under existing Kentucky case law notwithstanding the fact that they do not fall under any of the established hearsay exceptions.

In *Smith v. Commonwealth,* Ky., 904 S.W.2d 220 (1995), the Commonwealth produced evidence of the defendant's abuse of the decedent in an effort to establish a pattern of abuse that culminated in murder. *Id.* at 223. Part of this evidence consisted of an affidavit by the decedent victim in which he stated that the defendant "likes to abuse me." *Id.* Though contained in a sworn affidavit, the statement was still hearsay, which did not fall under any of the established hearsay exceptions. *Barnes v. Commonwealth,* Ky., 794 S.W.2d 165, 168 (1990). We found no error in the admission of either the evidence of abuse or in the admission of the statement. *Id.* at 224. Further, the hearsay issue was clearly before the Court. *Id.* at 226 (Chief Justice Stephens dissenting).

In *Matthews v. Commonwealth,* Ky., 709 S.W.2d 414 (1985), the Commonwealth introduced evidence of the existing difficulties between the defendant and his wife prior to the wife's murder. *Id.* at 418. The evidence included warrants for sexual abuse and for burglary taken out by the decedent. *Id.* at 418. We held that both warrants were admissible because they were "relevant not only as evidence of motive or state of mind, but as part of the immediate circumstances of the crimes charged." *Id.* Further, we found that the burglary warrant was admissible even though there was no direct evidence that the defendant was aware of its existence at the time of the murder, because "the circumstances that led to the warrant, and the warrant itself, reflected on a relevant pattern of conduct." *Id.* Whether the affidavit in support of the warrant was introduced into evidence is irrelevant. For the warrant by its very nature was, in essence, an out-of-court statement by the murder victim that, prior to the murder, the defendant had burglarized her home.

Norris's statements identifying Moseley as her abuser were admissible under the authority of *Smith* and *Matthews.* Because the trial court did not err in admitting these statements, I would affirm the conviction in all respects.

GRAVES and WINTERSHEIMER, JJ., join this dissent.