**William Louis ROGERS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–SC–000754–MR.

Supreme Court of Kentucky.

May 24, 2012.

Jude Anthony Hagan, Lebanon, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Joshua D. Farley, Assistant Attorney General, Attorney General's Office, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

William Louis Rogers, Jr., appeals as of right from an October 22, 2010 Judgment of the Nelson Circuit Court convicting him, following a jury trial, of two counts of trafficking in a controlled substance, second offense, pursuant to Kentucky Revised Statute (KRS) 218A.1412(2)(b) and one count of possessing a controlled substance, second offense, pursuant to KRS 218A.1415(2)(b). Rogers was sentenced as a first-degree persistent felony offender to a maximum term of twenty years in prison. The charges for which Rogers was indicted—three counts of trafficking—arose after he twice allegedly sold small amounts of cocaine to a confidential informant and after police, acting pursuant to a

search warrant, found more cocaine and drug paraphernalia secreted in his garage. Rogers maintains the trial court erred, (1) by denying his motion to suppress the garage evidence as the fruit of an illegal search; (2) by refusing to sever the trafficking charge based on the garage evidence from those based on the alleged sales to the confidential informant; and (3) by unfairly limiting his cross-examination of the forensic chemist, who tested various seized items for the presence of cocaine. In his reply brief, Rogers also seeks resentencing under what he characterizes as the penalty mitigating provisions of House Bill 463 (2011), which became effective in July 2011. Finding no error and no ground for relief in House Bill 463, we affirm both Rogers's convictions and his sentence.

### RELEVANT FACTS

The Commonwealth presented evidence that in September 2009 a confidential informant told officers of the Bardstown Police Department and the Hardin County Narcotics Crime Task Force that he would be willing to make a controlled cocaine buy from a Bardstown dealer with whom he was familiar, William Rogers. The buy took place during the late afternoon of September 8 at Rogers's home on McDonald Court. The informant gave Rogers two fifty-dollar bills in exchange for what eventually proved to be about a gram of cocaine. The lead detective in the case testified that police will often attempt to make multiple buys from a drug dealer in order to show that the sales were part of a pattern and were not, as a single sale might appear to have been, a one-time occurrence. Accordingly, the next day, September 9, 2009, the detective had the confidential informant arrange to make a second purchase from Rogers. Before that purchase took place, according to the detective, he obtained a search warrant for Rogers's house and garage. Within min-

utes of the confidential informant's confirming, by telephone, that he had made the second purchase, police officers arrived at Rogers's home and executed the warrant. The officers found in Rogers's pants pocket the five twenty-dollar bills the informant had just given him for what proved to be about 1.4 grams of cocaine. In a dresser in Rogers's bedroom, officers found one of the fifty-dollar bills from the first purchase. In Rogers's garage they found what proved to be more than twenty grams of cocaine together with the digital scales and small baggies commonly used by drug dealers to weigh and package retail amounts of drugs.

A week later, on September 16, 2009, a Nelson County Grand Jury indicted Rogers for, among other things, three counts of first-degree trafficking in a controlled substance. Soon thereafter, claiming that the officers had conducted the search of his residence prior to obtaining a warrant, Rogers moved to suppress all the evidence discovered during the search. The trial court denied that motion, and that denial is the focus of Rogers's first claim on appeal.

### ANALYSIS

### I. The Trial Court Did Not Err By Denying Rogers's Suppression Motion.

At the hearing on Rogers's suppression motion, the lead detective testified that he obtained the warrant from the trial court during the afternoon of September 9, 2009—he could not remember the exact time—and promptly took it to the staging area where he and other task force officers were preparing for the second controlled buy. The plan, according to the detective, was to have a search team in position near Rogers's residence at the time of the buy so that as soon as the confidential informant left the residence and confirmed the buy, the search team could move in and

conduct the search. Pursuant to this plan, the detective testified, he gave the signed warrant to the officer in charge of the search team, who had it in hand a short time later when Rogers's property was searched. According to the detective's subsequent report, the search began at about 4:50 that afternoon, immediately after the controlled buy. The controlled buy had commenced with the searching and outfitting of the confidential informant at about 4:30, as reflected by a tape recording in the record.

Timing quickly became an issue at the suppression hearing. In issuing the warrant, the trial court had acknowledged the detective's affidavit by signing the jurat at, according to the document, 4:50 p.m. When shown that document and asked how an officer who began a search at 4:50 could have had in hand a warrant that was not issued until 4:50, the detective acknowledged the apparent discrepancy, but reiterated that he had obtained the warrant before meeting with the confidential informant prior to the second controlled buy and before the search of Rogers's residence. At that point, the trial court indicated that for a couple reasons it believed it could well have mistakenly entered the wrong time on the jurat. First, the court observed, the courthouse was locked each day at 4:30, but the detective had come to his chambers without having had to be specially admitted, suggesting to the court that he could not have come as late as 4:50. Second, as the detective had testified, he initially asked for a so-called presumptive warrant based on the as yet unattempted second controlled buy.[1] He would not have made such a request, the court believed, if the second buy had in fact already occurred. Accepting the detective's account of the September 9 events and

believing that the warrant reflected a mistaken time of issuance, the trial court orally denied Rogers's motion to suppress premised on the search having been conducted before the warrant was issued.

The denial was confirmed a few days later by written order, in which the court found, expressly, that it had indeed made a mistake about the time the warrant was issued. Having reviewed court records from September 9, specifically the video tape of courtroom proceedings late that afternoon, the court found that he was conducting a hearing in another matter at 4:50 p.m.

> A review of that hearing conclusively establishes that the undersigned judge was continually presiding over same from 3:55 p.m. through 5:56 p.m. ... While conducting the ... hearing, this Court took a "ten minute" recess from 3:35:08 until 3:55:36.... When the hearing reconvened at 3:55:36, the undersigned judge stated the following: "Sorry about the delay. I had a search warrant waiting when I got back in chambers." ... As a result, this Court finds that the affidavit for search warrant was actually signed at 3:50 p.m. and not 4:50 p.m.

Rogers maintains that the trial court erred in a couple of ways by purporting to "correct" the search warrant in this manner. First, Rogers contends that by referring to the September 9 hearing in the unrelated matter to account for the timing of events that afternoon, the court was in effect taking judicial notice of its personal knowledge, a practice which this Court has consistently condemned. *Commonwealth v. Howlett*, 328 S.W.3d 191 (Ky.2010). Second, Rogers insists that the search warrant was not subject to correction un-

---

1. The trial court denied that request, apparently "scolding" the detective in the process, but granted the warrant based on the first controlled buy from the day before.

der Kentucky Rule of Criminal Procedure (RCr) 10.10, which allows for the correction at any time of "clerical mistakes," but not for the correction of judicial mistakes. Rogers contends that the misdating of the warrant here was an uncorrectable judicial mistake, not a clerical one. We disagree with both of these contentions.

## A. Judicial Notice

As Rogers correctly notes, under KRE 201(b) a court may take judicial notice of an adjudicative fact only if the fact "be one not subject to reasonable dispute" in that it is generally known in the county from which jurors are drawn or in the county of venue in a non-jury matter, or is "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Facts within the judge's personal knowledge from outside the record in the particular case do not satisfy that condition, and so, as we recently held in *Howlett*, may not be noticed under the rule. *Howlett*, 328 S.W.3d at 192–93 (judge improperly noticed his memory of the operating manual provisions for a breathalyzer machine, information derived from his prior experience as a DUI prosecutor). Here, however, the trial court was not resorting merely to its personal recollection of having been involved in the hearing of another matter at 4:50 p.m. on September 9, 2009; it was resorting rather to the official court record of that hearing. The question becomes then whether, for the purpose of showing that the court could not have issued the warrant at 4:50 p.m., but could and likely did issue it at 3:50 p.m., that record is a "source[ ] whose accuracy cannot reasonably be questioned." We believe that it is.

As Professor Lawson notes in his Kentucky evidence law treatise, before the enactment of the current Rules of Evidence, including KRE 201, judicial notice of court records was generally limited to records in the same case involving the same parties, and did not extend to records in other cases. Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 1.00[4][a] (4th ed.2003) (citing *Maynard v. Allen*, 276 Ky. 485, 124 S.W.2d 765 (1939) and *Jones v. Bell*, 304 Ky. 827, 202 S.W.2d 641 (1947)). Under KRE 201, however, court records are not singled out for special treatment, and it thus appears that they, like other sources of information, may now be resorted to for judicial notice provided that the particular record's accuracy cannot reasonably be questioned and provided further that the fact established by the record is not subject to reasonable dispute. According to Professor Lawson, this is the approach of the federal courts under their essentially identical rule, Lawson, *supra* at § 1.00[4][c], and it is the approach suggested by the drafters' comment to our rule. That comment gives as an example of the rule's appropriate application a hypothetical case in which "a notorious trial was held in a courthouse the month it was opened after renovation. In litigation between the county and the contractor over the renovation, the judge could take judicial notice of the use of the courtroom during the period in question." *Id.* at § 1.00[4][b] (quoting from *Evidence Rules Study Committee, Kentucky Rules of Evidence—Final Draft*, p. 16 (Nov.1989)). Under KRE 201, therefore, it may be appropriate to notice court records for the occurrence and timing of matters reflected in them—the holding of a hearing, say, or the filing of a pleading—but it will generally not be appropriate to notice the truth of allegations or findings made in another matter, since such allegations or findings generally will not pass the "indisputability" test. *See Meece v. Commonwealth*, 348 S.W.3d 627, 692–93 (Ky.2011) (upholding trial court's decision to take notice that a criminal charge had been dismissed, but

not to take notice of the purported reason for the dismissal).

Here, the trial court's resort to the record of the September 9 hearing was not for the sake of any fact within the substance of that hearing, but only for the fact that the hearing had occurred and had occupied the court from 3:55 p.m. until nearly 6:00 p.m. This is the type of fact the record may be relied upon to accurately reflect and one not subject to reasonable dispute. The court did not violate KRE 201, therefore, by taking judicial notice of that record.

## B. Clerical Mistake

Rogers contend that if the time noted on the warrant is erroneous, it was a judicial rather than clerical error and not subject to correction. In fact, the erroneously entered time was a clerical error.

■■■■ RCr 10.10, allows for the correction in orders and other parts of the record of clerical mistakes. A clerical mistake, we have noted, is a mistake "made by a clerk or other judicial or ministerial officer in writing or keeping records." *Cardwell v. Commonwealth*, 12 S.W.3d 672, 674 (Ky.2000) (citation and internal quotation marks omitted). Stated otherwise, it is "[a]n error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination." *Black's Law Dictionary*, 622 (9th ed.2009). Rogers's assertion to the contrary notwithstanding, in issuing the search warrant in this case, the trial court was not judicially determining the time of issuance. It was not making a finding or applying a legal standard. It was merely observing the time and marking it on the record. Its minor inadvertence in doing so was thus a clerical error, not a judicial error. The mistake having become apparent, the trial court did not exceed its authority or contravene the rules by correcting it. This result is consistent with the many federal cases finding that minor clerical errors, such as misdated or unsigned jurats, generally are not fatal to a search warrant, at least where other information makes the error apparent. *See, e.g., United States v. Waker*, 534 F.3d 168 (2nd Cir.2008) (noting the U.S. Circuit Courts of Appeal that have so found).

■■■■ Under RCr 9.78, we review a trial court's ultimate decision to grant or deny a suppression motion *de novo*, but its factual findings we review only for clear error, upholding findings supported by substantial evidence. *Peyton v. Commonwealth*, 253 S.W.3d 504 (Ky.2008). Here, the trial court found that the search warrant, mistakenly dated as having been issued at 4:50 p.m., had in fact been issued at 3:50 p.m., an hour before the search of Rogers's residence. That factual finding was supported by substantial evidence: the detective's testimony that, notwithstanding the discrepancy on the face of the warrant, he obtained the warrant prior to the search, and the September 9 court record the trial court appropriately noticed showing that the warrant could not have been issued at 4:50 that day, but likely was issued at 3:50. Given that evidence, the trial court's finding of fact that the warrant was issued prior to the search was not clearly erroneous. The search was pursuant to a validly issued warrant and was therefore lawful, justifying the trial court's decision to deny Rogers's suppression motion.

## II. The Trial Court Did Not Err By Denying Rogers's Severance Motion.

■■■■ Our conclusion that the search of Rogers's residence and garage was lawful largely disposes of his next claim as well. He contends that two of the trafficking charges, the two based on the alleged sales

to the confidential informant, should have been tried separately from the third trafficking charge, the one based on the evidence seized during the search of the house and garage. With respect to that evidence, it was alleged that Rogers possessed the more than twenty grams of cocaine found in the garage with the intent to sell it, a form of "trafficking" as that term is defined in KRS 218A.010. The main thrust of Rogers's argument appears to be (1) that the garage search was unlawful in that it preceded issuance of the warrant, (2) that the evidence derived from that search should therefore not have been admitted, and (3) that his defense of the first two trafficking charges was thus unduly prejudiced by being joined with a charge based on the inadmissible evidence. Since we have rejected Rogers's first premise regarding the lawfulness of the search, this argument has no force.

■ Otherwise, RCr 6.18 permits the joinder of separate offenses in a single indictment or information, provided that the offenses "are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." This rule must be applied in conjunction with RCr 9.16, which requires separate trials if joinder would result in undue prejudice to either party. As Rogers notes, "[t]he primary test for determining whether joinder constitutes undue prejudice is whether evidence necessary to prove each offense would have been admissible in a separate trial of the other." *Roark v. Commonwealth*, 90 S.W.3d 24, 28 (Ky. 2002). Here, both sales to the confidential informant and the search of Rogers's residence occurred within about a twenty-four hour period. Evidence of the two sales in the previous twenty-four hours would have been admissible under KRE 404(b) in a separate trial of the "possession with in-

tent to sell" trafficking charge as proof of Rogers's intent to sell the cocaine found in his garage. Under the same rule, evidence of the possession-with-intent-to-sell would have been admissible in a trial of the two sales-based charges as proof that Rogers had the product to make the sales and as proof of an integral part of Rogers's sales plan. *Cf. Peyton v. Commonwealth*, 253 S.W.3d at 504 (upholding joinder of four cocaine trafficking charges based on sales spanning about seven months); *Penman v. Commonwealth*, 194 S.W.3d 237 (Ky.2006) (upholding joinder of six cocaine trafficking charges based on sales and possession spanning a couple of months). The trial court did not abuse its discretion, therefore, by denying Rogers's motion to sever the two sales-based trafficking charges from the possession-based one.

### III. The Trial Court Did Not Err By Limiting Rogers's Cross–Examination of the Forensic Chemist.

■ Rogers next contends that he was denied a meaningful opportunity to impeach one of the Commonwealth's witnesses, the forensic chemist who weighed and analyzed the white powdery and crystalline substances sold to the confidential informant and found in Rogers's garage. The chemist testified that all of those substances contained cocaine. The chemist had earlier testified by avowal that she had been accused of taking things, including a controlled substance, from the home of a woman for whom she had been pet-sitting. The chemist denied the accusations and pointed out that several other people had had access to the victim's home. Nevertheless, the accusations had resulted in a sixty-day administrative leave from her job. The theft of a controlled substance charge, a felony, had been dismissed, and the other theft charge had been amended to attempted theft, a

misdemeanor. That charge and a misdemeanor criminal mischief charge were pending in the Jefferson District Court. The district court, on September 1, 2010, had ruled that the charges would be passed and would remain "on review" for two years. The chemist, who denied all of the charges, was to have no contact with the complaining witness, and at the end of the two-year period the charges were to be dismissed. Rogers sought to impeach the chemist by asking her if she had been accused of stealing a controlled substance, a felony, but the trial court limited this line of impeachment to a question as to whether the chemist had a pending charge of theft, which she admitted, and whether the charge had resulted in a period of administrative leave, which she also admitted. Rogers now contends that the fact that the chemist had been accused of stealing a controlled substance could somehow be thought to taint her analysis of the controlled substances in this case, and therefore that the trial court erred by disallowing his question about the theft of a controlled substance accusation.[2]

▮ Rogers correctly insists that cross-examination is a criminal defendant's fundamental right protected by the confrontation and due process provisions of both the Kentucky and United States Constitutions.

*Commonwealth v. Maddox*, 955 S.W.2d 718 (Ky.1997). In *Maddox*, this Court noted that "[w]itness credibility is always at issue and relevant evidence which affects credibility should not be excluded." *Id.* at 721. The Court continued, however, by also noting

> that trial courts retain a broad discretion to regulate cross-examination. "Defendants cannot run rough-shod, doing precisely as they please, simply because cross-examination is underway. So long as a reasonably complete picture of the witness' veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries."

*Id.* at 721 (quoting from *United States v. Boylan*, 898 F.2d 230, 254 (1st Cir.1990)).

▮ In particular, under KRE 608(b) [3] a witness may be cross-examined on a prior bad act that has not resulted in a criminal conviction, but only if that act is "probative of truthfulness or untruthfulness," and only if "the cross-examiner has a factual basis for the subject matter of his inquiry." The rule vests the trial court with broad discretion in its application, and in exercising that discretion the court should assess both the sufficiency of the examiner's factual predicate as well as the

2. Rogers does not and did not in the trial court assert that the Jefferson District Court charges gave the witness a reason to be biased in favor of a prosecution in Nelson County. *See Davenport v. Commonwealth*, 177 S.W.3d 763 (Ky.2005) (absent contrary showing, charges outside venue county do not support inference of bias in favor of prosecution within venue county). It appears, indeed, that the chemist had made her analysis of and prepared her report concerning the Rogers evidence before the Jefferson County charges ever arose. Rogers's sole claim, rather, is that the theft allegations, and in particular the theft of a controlled substance allegation, call into question the chemist's character for truthfulness.

3. Somewhat cryptically Rogers refers us, as he did the trial court, to KRE 607, the rule providing in general for the impeachment of any witness, including a party's own witness. Certainly Rogers was entitled to impeach the Commonwealth's forensic chemist, but the impeachment referred to in KRE 607 must be conducted in accord with the other pertinent rules. KRE 608(b) is one of those rules and the one most pertinent to the sort of impeachment Rogers sought to pursue. The trial court's focus on KRE 608(b) was thus appropriate.

prior bad act's relevance to the witness's "truthfulness or untruthfulness." Furthermore, KRE 608 is subject to KRE 403, so the court should also consider whether the probative value of the proposed cross-examination is substantially outweighed by the risk of unfair prejudice. *Wagner v. Georgetown University Medical Center*, 768 A.2d 546 (D.C.2001); *United States v. Schwab*, 886 F.2d 509 (2nd Cir.1989) (construing the virtually identical federal rules); *United States v. Atwell*, 766 F.2d 416 (10th Cir.1985) (same). The rule limits evidence of a witness's truthfulness-related prior bad acts to questions about those acts on cross-examination of the witness. It expressly disallows any attempt to prove such acts by means of extrinsic evidence.[4]

Here, the trial court appropriately noted the less than compelling factual predicate for the proffered impeachment, *i.e.*, the theft of a controlled substance charge had been dismissed. It also correctly noted that whatever relevance the alleged theft of items from the home where the chemist was pet-sitting may have had to her "untruthfulness"—theft can be but is not necessarily a crime of dishonesty, *State v. Pacheco*, 96 Hawai'i 83, 26 P.3d 572 (2001);

*State v. Johnson*, 784 P.2d 1135 (Utah, 1989)—the dismissed theft of a controlled substance allegation added nothing to that relevance. We are satisfied, therefore, that Rogers was given a fair opportunity to impeach the forensic chemist by establishing before the jury that she had a pending theft charge and had been given a period of administrative leave as a result. The trial court did not abuse its discretion by not allowing Rogers to ask the chemist if she had also been accused specifically of stealing a controlled substance, the subject of the dismissed charge.

## IV. Rogers is Not Entitled To Resentencing Under House Bill 463.

 Finally, Rogers contends that he should be resentenced in light of amendments made to KRS 218A.1412, KRS 218A.1415, and KRS 532.080 by House Bill 463 (2011), amendments affecting the penalties that may be imposed for trafficking in small amounts of cocaine and for possessing cocaine. House Bill 463 did not go into effect until July 2011, not only after Rogers's offenses, but after judgment had been entered against him and even after he had filed his original appellate brief in this Court. Nevertheless, Rogers maintains that because penalty mitigating

---

4. Arguably, asking the witness in this case whether she had been charged with theft and whether as a result of the charges she had been suspended from her job, as opposed to asking her whether she had stolen something from her acquaintance, violated the rule against hearsay as well as KRE 608(b)'s disallowance of extrinsic evidence. *Wagner v. Georgetown University Medical Center*, 768 A.2d at 546; *United States v. Davis*, 197 F.3d 662 (3rd Cir.1999); *United States v. Williams*, 986 F.2d 86, 89 (4th Cir.1993) ("Such [608(b)] cross-examination may not include inquiry into whether the defendant-witness has merely been arrested for another crime."); Stephen A. Saltzburg, *Impeaching the Witness: Prior Bad Acts and Extrinsic Evidence*, 7 Crim. Just. 28, 30 (Winter 1993); Kenneth S. Broun, 1 *McCormick On Evidence*, § 41 (6th ed.2009) ("[O]n cross-examination, the questioner should ask the witness directly and bluntly whether he committed the untruthful act. It is improper to inquire whether the witness was 'fired,' 'disciplined,' or 'demoted' for the alleged act—those terms smuggle into the record implied hearsay statements by third parties who may lack personal knowledge."). *But see United States v. Dawson*, 434 F.3d 956 (7th Cir.2006) (holding that while other rules might, Fed.R.Evid. 608(b) does not preclude asking the witness about the reactions of third persons to the alleged dishonest act.). Since the parties have not raised this issue, we do not address it, except to observe that whatever doubt exists in this area, Rogers received the benefit of it.

changes to the law may be applied retroactively and because the judgment sentencing him in accord with the prior law is not yet final, he should be permitted, even at this late stage of the proceedings, to invoke the benefits of the new law. We disagree based on unambiguous statutory language.

Rogers relies on KRS 446.110, which, in pertinent part, provides that "[i]f any penalty, forfeiture or punishment is mitigated by any provision of [a] new law, such provision may, by the consent of the party affected, be applied to *any judgment pronounced after the new law takes effect.*" KRS 446.110 (emphasis added). Although Rogers is correct that this statute allows for the retroactive application of penalty-mitigating changes to the law, *Commonwealth v. Phon,* 17 S.W.3d 106 (Ky.2000), by the statute's plain terms the retroactivity is limited to changes that take effect prior to the "pronouncement" of judgment. Here, judgment was pronounced against Rogers no later than October 22, 2010, when the Nelson Circuit Court entered judgment against him. House Bill 463 did not go into effect until the following July, some nine months later. Because House Bill 463 had not gone into effect at the time the judgment against Rogers was pronounced, Rogers may not now invoke the new law's penalty provisions.

### CONCLUSION

In sum, Rogers was fairly tried and convicted. Substantial evidence, including properly noticed court records, supports the trial court's finding that the warrant authorizing the search of Rogers's residence was duly issued prior to the search. Rogers's motion to suppress the fruits of that search was therefore properly denied. Joinder of the sales and possession-with-intent-to-sell trafficking charges did not unduly prejudice Rogers, since evidence of the interrelated charges would have been mutually admissible in separate trials. The trial court did not deny Rogers a meaningful opportunity to cross-examine the Commonwealth's forensic chemist. The dismissed allegations against the chemist into which Rogers wished to delve had neither the factual basis nor the relevance to truthfulness that KRE 608 requires. Finally, since judgment was pronounced against Rogers prior to the effective date of newly enacted House Bill 463, he is not entitled under KRS 446.110 to resentencing in accord with the penalty provisions of the 2011 law. Accordingly, we hereby affirm the October 22, 2010 Judgment of the Nelson Circuit Court.

All sitting. All concur.