# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 22, 2018
NOT TO BE PUBLISHED

Supreme Court of Kentucky FINAL

2017-SC-000152-MR   DATE 4/12/18 Kim Redmon, DC

ZACHARY ALLEN GROSS                                    APPELLANT

                    ON APPEAL FROM BOONE CIRCUIT COURT
V.              HONORABLE RICHARD BRUEGGEMANN, JUDGE
                        CASE NO. 15-CR-00849

COMMONWEALTH OF KENTUCKY                                APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A Boone County jury found Zachary Allen Gross guilty of assault in the first degree and Gross's punishment was fixed at 20 years' imprisonment. On appeal, Gross asserts the following four errors: (1) the trial court erred in allowing impermissible character and prior bad acts evidence; (2) the trial court allowed improper expert testimony; (3) the trial court barred defense counsel from effective cross-examination; and (4) the trial court denied defense's request for an imperfect self-defense jury instruction. After a thorough review of the record, we affirm.

### I. BACKGROUND

Gross had a romantic relationship with Marilyn Stanley. On September 14, 2015, Gross sent Stanley over 100 text messages and called her 41 times,

suspecting infidelity on the part of Stanley. Gross picked Stanley up from her mother's home and the two stopped to get lunch before going to Gross's trailer. According to Stanley, while eating their lunch, Gross punched Stanley twice on the left side of her face. Stanley tried to leave but Gross grabbed her around the waist and carried her into the bedroom. While being carried to the bedroom, Stanley pulled a knife from her pocket. Stanley testified she carried the knife because she was afraid of Gross.

Gross put Stanley on the floor in his bedroom, straddled her, and held her hands down. Gross's pit bull, Capone, began biting at Stanley's head while Gross told Stanley to drop the knife. Capone bit Stanley's ear, causing her to drop the knife, which Gross picked up. Stanley grabbed her head and hair and testified that her hair was still attached to her head at that point. Stanley testified that she next remembered Gross kneeling in front of her saying, "Look at you. You're bald. Now nobody's going to want you. Go look at yourself in the mirror." A significant portion of Stanley's scalp had been removed during the altercation. Stanley went to the bathroom and sat on the toilet but did not look in the mirror. When she returned to the bedroom, Gross made Stanley lie on the floor where he stomped on her ribcage twice.

Gross grabbed Stanley's scalp and hair and put it in a plastic Kroger bag. Stanley lost 40 percent of her scalp and she will never be able to regrow hair where the scalp is missing. Stanley testified that she asked Gross to call 911 but Gross refused, claiming the police would take his dog away. Gross drove Stanley towards her mother's house, dropping her off down the street. When

2

Stanley walked towards her mother's house, she called for help and her mother called an ambulance.

Stanley had multiple surgeries to her scalp and ears and now must wear a hat in public. Stanley also suffered broken ribs and had an artery cut in her right arm causing permanent muscular degeneration. Stanley did not tell detectives at the hospital that Gross used the knife on her or that he commanded Capone to attack her.

Gross recalled a different set of events. According to Gross, the two accused each other of infidelity at the trailer. Stanley pulled a knife on Gross, and he pinned her against the wall to keep her from swinging the knife. Gross punched Stanley in the face and Capone grabbed at Stanley's leg. Gross tried to kick Capone away, but Stanley ran to the bedroom and Capone followed her.

When Gross entered the bedroom, Stanley was already on the floor with Capone attacking her head. Gross tried to shield Stanley from the dog, and when Stanley finally dropped her knife, Gross put the dog in the bedroom closet. Gross saw Stanley's scalp was torn off and told her that she needed to go to the hospital. Stanley did not want to get the police involved because she was afraid they would take the dog.

Gross carried Stanley into the bathroom and sat her on the toilet. Gross tried to call 911, but Stanley told him not to. Capone got out of the closet and walked into the bathroom. Gross tried to kick him away, but Stanley said not to discipline the dog. Gross said he never used the knife nor commanded Capone to attack Stanley.

3

At trial, Dr. William John Kitzmiller offered expert testimony for the Commonwealth. Dr. Kitzmiller treated Stanley's scalp wound and he testified to the severity of the injury and the multiple surgeries endured by Stanley. He testified that the injury to Stanley's scalp was more consistent with an injury caused by a sharp object than a dog bite.

The jury determined that Gross committed first-degree assault and recommended a sentence of twenty years' imprisonment. The trial court sentenced Gross according to the jury's recommendation. Gross now appeals as a matter of right. Additional facts shall be set forth below as necessary.

## II. ANALYSIS

### A. The trial court properly admitted prior bad acts evidence.

Gross's first allegation of error involves the trial court allowing the Commonwealth to present prior bad acts evidence via text messages, Facebook messages, and witness testimony. Gross properly preserved the claim of error regarding the text and Facebook messages and Stanley's testimony.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
> (1) if offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

Kentucky Rule of Evidence (KRE) 404(b).

"The trial judge has sufficient discretion to admit evidence of uncharged bad acts if it is relevant, probative and the potential for

4

prejudice does not outweigh the probative value of such evidence." *Parker v. Commonwealth*, 952 S.W.2d 209, 213 (Ky. 1997). This Court has held that evidence of prior, similar acts of abuse against the same victim of the alleged crime is "almost always admissible" under KRE 404(b) to prove the defendant's "intent, plan, or absence of mistake or accident." *Dant v. Commonwealth*, 258 S.W.3d 12, 19 (Ky. 2008) (citing *Noel v. Commonwealth*, 76 S.W.3d 923, 931 (Ky. 2002)).

The standard of review of a trial court's evidentiary rulings is abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

To be admissible prior bad acts evidence, the evidence must fall within one of the exceptions listed in KRE 404(b). Here, the Commonwealth sought to introduce evidence of Gross's prior acts of violence against Stanley to show Gross's motive and intent to commit the crime charged and to show the absence of mistake or accident.

**Text and Facebook messages.**

The Commonwealth sought to introduce text and Facebook messages between Gross and Stanley. These messages showed that

5

Stanley was afraid of Gross,[1] Gross threatened to kill Stanley,[2] Gross hit Stanley on a regular basis,[3] and that Gross choked Stanley on the ground.[4]

This Court agrees with the trial court and the Commonwealth that this evidence was admissible to show Gross's intent.

> Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.

*Walker v. Commonwealth*, 52 S.W.3d 533, 537 (Ky. 2001) (citing *United States v. Beechum*, 582 F.2d 898, 911 (5th. Cir. 1978), *cert. denied*, 440 U.S. 920 (1979)).

---

[1] I'm sorry that I scare u often I'm tryin to not make fast or quick moves around u or toward u that may scare u I hate hate hate that u r scared of me cuz u shouldn't have to b scared of the one u love but I understand why u r scared and I don't blame u BUT I promise ima prove to u that u don't have to b scared anymore and I am here to protect u and give u all that u need an everthin u need and then some I love u with all my heart. Com. Ex. 18: Text message from Gross to Stanley.

[2] I do love you. I meant ever thing I said. But how many times you gonna threaten to kill me before you really do. I quit heroin because I don't want to die. And I don't want to worry about you thinking shit up in your head and snapping on me. You have hit me at least every other week since the first time. And broke what little material things I do have. And you hurt me. You wouldn't do the things you've done to me if you really cared about me. You say you put everyone's happiness before your own. But as far as I'm concerned.. you don't. And I don't think you'll ever be concerned about my happiness. I want to feel safe and secure. And that's gone. Com. Ex. 29: Facebook message sent from Stanley to Gross.

[3] See Com. Ex. 29, fn. 2.

[4] Good. Don't. And yeah. Just slap me punch me throw be down stairs down to the ground choke me out and break my phone and my car and try to tell me about work and the wedding to fuck with me and Lacey and Amanda and whoever else. And I still fucking called to see you knowing you were leaving for Vegas. And yea. That is so right. Com. Ex. 32: Facebook message sent from Stanley to Gross. (While Gross only quotes a portion of this message in his brief, the entire message is provided here.)

Once determined to fall within an exception listed in KRE 404(b), the prior bad acts evidence must satisfy the three-prong test described in *Bell v. Commonwealth,* 875 S.W.2d 882, 889-91 (Ky. 1994), which analyzes the proposed evidence in terms of (1) relevance, (2) probativeness, and (3) its prejudicial effect. *Driver v. Commonwealth,* 361 S.W.3d 877, 883 (Ky. 2012). "With respect to relevance, the assessing court asks, is the evidence relevant 'for some purpose other than to prove the criminal disposition of the accused?' Aside from showing criminal propensity, that is, the extrinsic act evidence must bear *materially* on an element of the offense or on some other fact actually in dispute." *Jenkins v. Commonwealth,* 496 S.W.3d 435, 457 (Ky. 2016) (emphasis in original) (internal citations omitted).

The messages introduced at trial were relevant to the material issues of Gross's intent to commit the assault and to show the absence of accident. Despite Gross's assertions that the messages were not relevant because they did not establish temporal proximity to the alleged assault in this case, the messages were very close in time to the alleged assault. Commonwealth's exhibit 18 occurred on September 11, 2015; exhibit 29 occurred on July 26, 2015; and exhibit 32 occurred on August 20, 2015. The alleged assault occurred on September 14, 2015. This Court believes the proximity was close enough to satisfy the relevancy requirement.

7

Gross argued that his dog, Capone, was protecting him and attacked Stanley. At trial the Commonwealth was tasked with proving an actual crime occurred. This Court has long held that prior acts evidence can be admitted to show the absence of accident[5] and we believe the messages admitted into evidence are relevant to show Gross intended to commit the assault.

The second prong looks to the probativeness of the evidence. The prior acts evidence occurred within a few months before the alleged assault and occurred at the same place (Gross's home). The evidence of Gross's past violence against Stanley is probative of the assertion that Gross acted intentionally to assault Stanley on September 14, 2015. This Court finds the evidence was admitted for other purposes than to prove Gross's propensity to commit criminal acts.

The final prong to be addressed is whether the probative value of the evidence was outweighed by the danger of undue prejudice. The messages were not unduly emphasized, and Gross had complete opportunity to contest the messages through cross-examination. "Undue prejudice is most often found where there is a risk that the evidence might produce a decision grounded in emotion rather than reason or where the evidence might be used for an improper purpose." *Wilson v. Commonwealth*, 438 S.W.3d 345, 350 (Ky. 2014)(internal citations

---

[5] *Moseley v. Commonwealth*, 960 S.W.2d 460, 461 (Ky. 1997) ("Evidence that Appellant had abused his victim on prior occasions was relevant to prove the absence of accident or mistake when he subsequently killed her.")

8

omitted). The prior act evidence in this case was far less severe than the acts for which Gross was charged and tried. Such prior act evidence is not of the caliber to "produce a decision grounded in emotion rather than reason." Thus, we find the risk of undue prejudice to have been mitigated by the probative value of such evidence. The trial court's decision to admit the messages was not an abuse of discretion.

**Marilyn Stanley's Testimony.**

The Commonwealth sought to have Stanley testify to an incident in July 2015, in which Gross choked her on his bed, causing Stanley to lose consciousness and urinate on herself. Stanley was also prepared to testify that Gross had referenced the choking incident during the assault in the current case. The Commonwealth argued that it sought to introduce this testimony to prove the element of intent.

Gross maintains the testimony is not relevant because Gross did not choke Stanley during the incident in the present case, Stanley drew no connection between the choking episode and the current assault, and Stanley's testimony did not make it any more probable that Gross caused the injuries to Stanley's scalp. Gross further argued that the evidence is not probative because it did not lead to an arrest and it is unduly prejudicial because it only emphasized Gross's violent character. We disagree.

As stated above, this prior choking incident is relevant to show Gross's intent to inflict injury upon Stanley on September 14, 2015; it is

9

probative in that both incidents occurred in Gross's home and in his bedroom; and the testimony was not so inflammatory as to elicit an emotional response from the jury.

**Stanley's Mother's Testimony.**

Stanley's mother, Linda, testified about her call to 911 after Stanley returned from Gross's trailer. Linda told the dispatcher that Gross had hurt Stanley even though Stanley had not yet told her mother what had happened. Linda also gave the dispatcher Gross's address and license plate number saying she knew something like this would eventually happen and she would have to call 911.

This issue is unpreserved and Gross requests palpable error review.

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

Rule of Criminal Procedure (RCr) 10.26.

> A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings. Thus, what a palpable error analysis boils down to is whether the reviewing court believes there is a substantial possibility that the result in the case would have been different without the error. If no, the error cannot be palpable.

*Doneghy v. Commonwealth*, 410 S.W.3d 95, 106 (Ky. 2013) (citing *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006)).

We find no error in the trial court's admission of Linda's testimony, let alone palpable error. As stated previously, prior acts may be admissible if so

10

intertwined with other evidence in the case. KRE 404(b)(2). "KRE 404(b)(2) allows the Commonwealth to present a complete, unfragmented picture of the crime and investigation[,] including a picture of the circumstances surrounding how the crime was discovered." *Kerr v. Commonwealth*, 400 S.W.3d 250, 261 (Ky. 2013)(internal citations omitted).

"This exception to the general exclusionary rule allows for the introduction of prior bad acts when relevant to providing context to the crime being tried because[:]

> the acts that constitute crimes cannot be understood without at least some reference to acts, events, or conditions that lead up to them . . . even though not inherent in or necessary to the crime. . . . [W]itnesses cannot convey what they know to the trier of fact without making at least some reference to acts, events, or conditions that are a natural part of a narrative without referring to at least some tings that are not essential in proving the crime itself. . . . Hence[,] it becomes reasonable to speak of a "complete story" rule[;] and the system allows proof of what amounts to uncharged crimes[ ] when these are necessary in telling and understanding the story of the charged crimes."

*Id.* at 261-62. (internal citations omitted).

Linda's testimony was relevant in understanding the complete crime. Stanley was at her mother's home the morning of September 14, 2015. She returned to her mother's home after sustaining her injuries. Linda called 911. Although this evidence was prejudicial, most evidence sought to be introduced by the Commonwealth is prejudicial to some degree. Gross's trial covered four days. Linda's testimony, to which Gross objected, consisted of less than 2 minutes of those four days.[6] Further, Gross had ample opportunity to cross-

---

[6] Trial record, January 30, 2017, 1:58:00-1:59:16 p.m.

11

examine Linda. The trial court did not abuse its discretion in admitting the evidence.

Gross finally contends that because he received the maximum sentence imposed by the verdict, prejudice from the above admitted evidence must be presumed. As we have said before,

> this argument confuses different senses of the word 'prejudice' and different standards of review. Had the trial court erred by admitting the prior-act testimony, the effect of that testimony would have been relevant to a consideration of whether the error was harmless, say, or palpable. Generally, however, properly admitted evidence simply has the effect that it has; it does not become improperly admitted because the jury happens to give it weight. The *actual* prejudice that pertains to harmless-error and to palpable-error analysis should not be confused with the *potential* for undue prejudice that bears upon a court's admissibility ruling under KRE 402 and 404.

*Jenkins,* 496 S.W.3d at n. 20. (emphasis in original).

## B. Dr. William John Kitzmiller was qualified to give an expert opinion about the cause of Stanley's injury.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . ." KRE 702. The decision to qualify a witness as an expert rests in the sound discretion of the trial court. *McDaniel v. Commonwealth,* 415 S.W.3d 643, 655 (Ky. 2013). "Presumably, jurors do not need assistance in the form of an expert's opinion that the defendant is guilty or not guilty. However, they usually do need the assistance of a medical expert in determining the cause of a physical condition in order to understand the evidence and determine the ultimate fact in issue."

12

*Stringer v. Commonwealth,* 956 S.W.2d 883, 889-90 (Ky. 1997) (citing KRE 401; KRE 702)).

An expert's testimony must be relevant, must relate to a material issue in the case, and the expert's knowledge must aid the trier of fact. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 591-92 (1993). The expert testimony should be based upon personal observation, examination, and testing. *See Burton v. Commonwealth,* 300 S.W.3d 126, 141 (Ky. 2009).

Dr. Kitzmiller was the plastic surgeon who treated Stanley's injuries. The trial court conducted an evidentiary hearing in which Dr. Kitzmiller testified to his education and experience and to his treatment of Stanley. Dr. Kitzmiller had treated patients with scalp injuries, including over 200 patients with scalp injuries due to dog attacks. One of those 200 patients lost a large amount of scalp. Dr. Kitzmiller also testified to treating hundreds of general knife wounds, although he had not treated a scalping wound caused by a knife. The trial court qualified Dr. Kitzmiller to testify to Stanley's injuries, the treatment he provided, and his opinion on causation.

At trial, Dr. Kitzmiller stated that although he could not be certain, in his personal opinion Stanley's injuries favored a sharp object rather than a dog bite. Gross argues that because Dr. Kitzmiller had never treated a scalping caused by a knife he was unqualified to comment on the causation of Stanley's scalp injury. Gross's argument is unpersuasive.

Dr. Kitzmiller had significant experience treating both dog bite and knife injuries. His testimony describing the straight nature of the edges and the

13

disruption of Stanley's scalp undoubtedly stems from his extensive experience treating similar injuries. The decision to qualify an expert is not an abstract decision but rather whether the witness's qualifications provide the necessary foundation to respond to the specific question asked. *Kemper v. Gordon*, 272 S.W.3d 146, 154 (Ky. 2008). This Court finds Dr. Kitzmiller had sufficient qualifications, schooling, training, and experience to be qualified as an expert. Courts will reject expert testimony where it is based on rank speculation. Wright and Gold, Federal Practice and Procedure: Evidence § 6264. Dr. Kitzmiller's testimony was not rank speculation, even though it was equivocal, in some aspects. This equivocation goes to the weight of the evidence, not the admissibility. As such, this Court finds no abuse of discretion.

## C. The trial court did not err when it prohibited Gross from asking Marci Adkins about mishandling evidence in a prior case.

Marci Adkins, with the Kentucky State Police Central Lab, tested blood stains in Gross's trailer, the knife, a shoe, a pair of shorts, a cup, Stanley's fingernail clippings, and buccal swabs taken from both Gross and Stanley. Adkins' testimony at trial was that there was no foreign DNA found on Stanley's fingernails.

Gross asked Adkins if she was familiar with the case of *Commonwealth v. Barbour*, and Adkins responded affirmatively. The Commonwealth objected when Gross asked Adkins what happened in that case. The Commonwealth claimed irrelevancy to the present case. Gross's counsel defended by saying Adkins lost evidence in the *Barbour* case and that was relevant to her credibility. The trial court informed counsel that he could ask about the

14

*Barbour* case if there was anything to suggest a misreporting of results, a mischaracterization of analysis or results, or anything to challenge Adkins' testimony in the present case.

The trial court sustained the Commonwealth's objection to any other inquiry into the *Barbour* case because it felt it was improper impeachment that would only confuse the jury. Gross maintained his theory of self-defense. Stanley attacked Gross, Gross acted in self-defense, and then Capone attacked Stanley. Adkins' testimony regarding no foreign DNA under Stanley's nails undermined Gross's defense because it tended to show Stanley did not put her hands on Gross. According to Gross, he was entitled to question Adkins credibility before the jury.

"Cross-examination is a criminal defendant's fundamental right protected by the confrontation and due process provisions of both the Kentucky and United States Constitutions." *Rogers v. Commonwealth*, 366 S.W.3d 446, 454 (Ky. 2012)(citing *Commonwealth v. Maddox*, 955 S.W.2d 718 (Ky. 1997)). However, it is well established "that the right to cross-examination is not absolute and the trial court retains the discretion to set limitations on the scope and subject: '[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish'." *Davenport v. Commonwealth*, 177 S.W.3d 763, 767-68 (Ky. 2005) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (emphasis in original)). Trial courts retain wide latitude to impose reasonable limits on cross-examination "based on

15

concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 768 (internal citations omitted).

When the scope of cross-examination is on a collateral issue, the trial court must first determine whether the subject of cross-examination is relevant "and then determine whether the probative value is outweighed by the prejudicial effect." *Commonwealth v. Maddox*, 955 S.W.2d 718, 721 (Ky. 1997) (internal citations omitted). When the cross-examination is of one other than the defendant, greater latitude is generally allowed. *Id.* (citing *Byrd v. Commonwealth*, 825 S.W.2d 272 (Ky. 1992); *Sanborn v. Commonwealth*, 754 S.W.2d 534 (Ky. 1988); and *Barrett v. Commonwealth*, 608 S.W.2d 374 (Ky. 1980)). "Nevertheless, a connection must be established between the cross-examination proposed to be undertaken and the facts in evidence. A defendant is not at liberty to present unsupported theories in the guise of cross-examination and invite the jury to *speculate as to some cause other than one supported by the evidence.*" *Id.* (emphasis added).

There was no evidence presented to support a theory of the mishandling of evidence or a break in the chain of custody of evidence. Because the proposed cross-examination involved a collateral matter, this Court finds that it did not satisfy relevancy requirements. Further, we agree with the trial court that this testimony, had it been elicited, would have likely confused the jury. This is the type of evidence the *Maddox* Court advised against – evidence that

16

would have invited the jury to speculate as to causation. We find no abuse of discretion in the trial court's prohibition of this cross-examination.

## D. The Defendant was not entitled to a jury instruction on imperfect self-defense.

The jury found Gross guilty of assault in the first degree believing that he caused serious physical injury to Stanley using a knife and that he was not privileged to act in self-protection. The jury also found Gross guilty of assault in the first degree believing that he caused serious physical injury to Stanley using his dog and that he was not privileged to act in self-protection. The trial court qualified each assault instruction with a general self-defense provision. Gross's final argument is that the trial court erred when it failed to instruct the jury on imperfect self-defense. Defense counsel tendered proposed instructions for second-degree assault and fourth-degree assault, both containing theories of imperfect self-defense.

The two second-degree assault instructions referred to the infliction of serious physical injury through *intentionally* punching and/or kicking and by *wantonly* using his dog to cause injury, respectively. The two fourth-degree assault instructions referred to the infliction of serious physical injury through *intentionally* punching and/or kicking and by *recklessly* using his dog to cause injury, respectively.

This Court finds Gross was not entitled to an instruction on imperfect self-defense. First, Gross's version of events does not support the giving of such an instruction. Here, Gross testified that Stanley attacked him in the

17

kitchen and he reacted in self-defense. Stanley ran to the bedroom and when Gross arrived, Capone was already attacking Stanley's head.

Under Gross's own version of events, he never inflicted injury to Stanley's scalp either through the use of a knife or in the use of his dog. Because Gross maintained that he did not scalp Stanley, the evidence did not support a jury instruction claiming Gross was mistaken in his belief in the need to scalp Stanley to protect himself. The trial court does not have a duty to instruct on a theory with no evidentiary foundation. *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998).

Further, taking Gross's recollection of the facts as true, once Stanley ran into the bedroom, any further belief of danger on the part of Gross was dispelled. Upon further altercation with Stanley in the bedroom, Gross became an initial aggressor. A defendant loses the justification of self-defense if the defendant was the initial aggressor. KRS 503.060. Therefore, even if this Court was to find that the evidence supported the giving of an imperfect self-defense instruction, such error would be harmless because the instruction would also have to be qualified with an initial aggressor instruction, which the jury was also presented with. Any error in failing to give an instruction is deemed harmless as we cannot see the outcome of this case being any different.

Second, any error of failing to include an imperfect self-defense instruction in the intentional instructions of assault second and assault fourth was harmless because Gross was not convicted of either crime. These

18

instructions allowed the jury to convict Gross of intentionally inflicting serious physical injury upon Stanley by means of punching and/or kicking. Because Gross was not convicted under these statutes, this Court will not posit a different outcome had the imperfect self-defense instruction been provided.

Finally, we cannot say the outcome would have been different had Gross received the instruction in regard to the wanton (assault second) and reckless (assault fourth) assault charges. We reiterate that imperfect self-defense does not provide for complete exoneration, but instead allows a jury to convict a defendant of a lesser offense, *i.e.*, one for which wantonness or recklessness is the culpable mental state. *Elliott v. Commonwealth*, 976 S.W.2d 416, 420 (Ky. 1998). Because the jury found Gross to have acted intentionally and without any justification, we do not find any error in the failure to give the imperfect self-defense instruction to the lesser included offenses.

## III. CONCLUSION

For the foregoing reasons, the judgment of the Boone Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Steven Jared Buck
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

William Robert Long Jr.
Assistant Attorney General

20